The LITITZ MUTUAL INSURANCE
CO., a corp., Respondent,

v.

Amy Lea BRANCH, Richard Leo Branch,
and A. W. Kable and Maureen F. Kable,
his wife, Appellants.

No. 38830.

Missouri Court of Appeals,
St. Louis District,
Division 1.

Nov. 15, 1977.

Motion for Rehearing and/or Transfer
Denied Jan. 18, 1978.

Application to Transfer Denied
March 13, 1978.

Baer, Hines & Thomas, Richard C. Thomas, Columbia, Van Matre & Van Matre, Everett S. Van Matre, Mexico, for appellants.

Edwards, Seigfreid, Runge & Leonatti, P/C Jerome W. Seigfreid, Louis J. Leonatti, Mexico, for respondent.

SMITH, Judge.

Defendants appeal from a declaratory judgment entered by the trial court determining that a homeowner's policy issued by plaintiff insurance company does not obligate plaintiff to defend the Kables in a lawsuit brought by defendants Branch for injuries sustained by Amy Lea Branch when she was bitten by a dog owned by the Kables.

The dog involved was an eight year old male Weimaraner named Baron. On June 16, 1974, Baron bit a neighbor boy, Virgil McCormack, while Baron was tethered near the Kable home. Baron was taken to a veterinary clinic where he remained under observation for ten days. Upon his release, Baron was taken by Mr. Kable to the premises of the Kable Dairy Company—a business owned by the Kables. The dog was tethered at that location where he remained until July 12, 1974, when he bit the Branch girl. Mr. Kable kept the dog on the dairy company premises because he believed the McCormack bite was the result of continuous harassment and teasing of Baron by the McCormack children and their friends. Following the Branch bite, Mr. Kable had the dog destroyed.

Following suit by the Branches against the Kables, plaintiff filed this declaratory judgment suit to have determined its liability under a homeowner's policy issued to the Kables and covering the residence premises of the Kables. Plaintiff contended that three exclusions applied to preclude coverage. Those three exclusions are set forth in the margin.[1] The trial court found that the presence of the dog on the dairy company

---

1. "This policy does not apply:
   1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:
      . . .
      d. to bodily injury or property damage arising out of business pursuits of any Insured except activities therein which are ordinarily incident to non-business pursuits;
      e. to bodily injury or property damage arising out of any premises, other than an insured premises, owned, rented or controlled by any insured; but this exclusion does not apply to bodily injury to any residence employee arising out of and in the course of his employment by any Insured;
      f. to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

premises was not for business purposes so that exclusion 1(d) did not apply. It also found that Mr. Kable did not intend or expect the Branch bite so that exclusion 1(f) did not apply. Plaintiff does not take issue with either of these findings and both are fully supported by the evidence. The court also found that none of the three exclusions applied to the medical payments coverage of the policy. It found, however, that exclusion 1(e) does apply to the liability coverage of the policy and that the bodily injury sustained arose out of premises, other than the insured premises, controlled by the insured. In determining that exclusion 1(e) did not apply to medical payments, the court found that the policy specifically provided for coverage when the injury was caused by "an animal owned by . . ." the insured elsewhere than on the insured premises. No such specific language is contained in the personal liability coverage. Plaintiff concedes that the court's finding on the medical payment coverage is correct. There is no factual dispute that the dairy company premises are controlled by the insured, Mr. Kable; that the dog was located on those premises at the time of the Branch bite; that he had been so located for at least two weeks; and that the residence premises insured by the homeowner's policy was the Kable residence not the dairy company premises.

■ We are therefore left with determining whether this bodily injury was one "arising out of . . . premises, other than an insured premises, . . . controlled by . . . insured. . . . We conclude it was not. The liability coverage provided was to the insured for damages he might become legally obligated to pay caused by an "occurrence." An occurrence is defined as an accident. The personal liability coverage set out in the policy would, in the absence of an exclusion, apply to the dog bite, as the liability coverage itself contains no restrictions as to location of the injury. If the dog bite is not covered it is because it was an injury "arising out of" the dairy company premises.

We find no cases interpreting the words "arising out of" in a fact situation similar to this. In *Toole v. Bechtel Corporation*, 291 S.W.2d 874 (Mo.1956) "arising out of employment" was defined as follows:

"An injury arises 'out of' the employment when there is a direct causal connection between the injury and the employment; and, even though the precise injury need not have been anticipated, it must have been a rational consequence of some hazard connected with the employment." [3].

In *Schmidt v. Utilities Ins. Co.*, 353 Mo. 213, 182 S.W.2d 181 (1944) [3], the court was determining the meaning of the phrase "arising out of the . . . use of the automobile." The term "arising out of" was held to mean originating from, or having its origin in, or growing out of, or flowing from.

■ Premises are defined to mean "a specified piece or tract of land with the structures on it . . . a building, buildings, or part of a building covered by or within the stated terms of a policy." Webster's Third New International Dictionary, p. 1789. The insurance policy here defines "residence premises" as "(1) a one or two family dwelling building, appurtenant structures, grounds and private approaches thereto; or (2) that portion of any other building occupied as a residence . . . ." It is apparent that "premises" in common parlance and in the policy itself contemplates the land and more or less permanently affixed structures contained thereon. It does not contemplate easily movable property which may be located on the property at a given time or even on a regular or permanent basis. A dog, whether permanently kenneled or tethered on the property, is not a part of the premises.

It cannot therefore be said that a dog bite arises out of—originates from, grows out of, or flows from—the premises. That it occurs upon the premises does not establish a causal connection between the bite and the premises. We find that the language used does not contemplate that the exclusion applies to liability arising from a dog bite occurring on the Kable business property. See *Duggan v. Travelers Indemnity Co.*, 383 F.2d 871 (1 Cir. 1967).

**374**

This conclusion is also supported by the obvious purpose of the liability coverage and the exclusions provided from such coverage. The personal liability insured against is of two kinds: first, that liability which may be incurred because of the condition of the premises insured; secondly, that liability incurred by the insured personally because of his tortious personal conduct, not otherwise excluded, which may occur at any place on or off the insured premises. The insurance company may well limit (and has by exclusion 1(e)) its liability for condition of the premises to the property insured for which a premium has been paid. It is reasonable that the company may not provide for liability coverage on "conditions" which cause injury on other uninsured land. It would be a rare case where an insured was liable for the condition of premises which he did not own, rent or control. It is to be expected, therefore, that the company's liability for condition of the premises would be restricted to accidents happening on or in close proximity to the insured premises, and that premiums would be charged with that in mind. It would be unreasonable to allow an insured to expand that coverage to additional land and structures owned, rented or controlled by him which are unknown and not contemplated by the company.

The company has not chosen to geographically limit the coverage provided for tortious personal conduct of the insured. If it had so intended, it could simply have provided that the exclusion ran to an accident "occurring on" other owned premises. There appears to be little reason to exclude personal tortious conduct occurring on owned but uninsured land, as little correlation exists between such conduct and the land itself. Liability for injuries caused by an animal owned by an insured arises from the insured's personal tortious conduct in harboring a vicious animal, not from any condition of the premises upon which the animal may be located. The language used in exclusion 1(e) recognizes this distinction.

Judgment reversed with directions to enter judgment declaring that plaintiff's policy provides both personal liability coverage and medical payment coverage to the Kables for the alleged injury sustained by Amy Lea Branch as a result of the alleged attack by the Kable's dog.

CLEMENS, P. J., and McMILLIAN, J., concur.