MICHAEL F. CALLAHAN *vs.* QUINCY MUTUAL FIRE
INSURANCE CO.

No. 98-P-2311.

Norfolk. May 10, 2000. - October 19, 2000.

Present: KASS, LAURENCE, & DUFFLY, JJ.

*Insurance,* Homeowner's insurance, Coverage, Construction of policy,
Insurer's obligation to defend. *Contract,* Insurance, Construction of
contract, Indemnity. *Words,* "Arising out of."

An exclusion in a homeowner's policy that excluded liability for bodily injury
"arising out of" premises owned by the insured, but not insured under the
policy, did not operate to exclude personal liability coverage for a dog bite
occurring on such premises, with the result that the insurer was bound to
defend and indemnify the policy holder for his tortious conduct in harbor-
ing a vicious dog. [261-265]

CIVIL ACTION commenced in the Superior Court Department on
October 3, 1997.

The case was heard by *Elizabeth Butler,* J., on motions for
summary judgment.

*Gerald J. Caruso* for the plaintiff.
*Chris Byron* for the defendant.

KASS, J. Harley the dog has a sorry record of recidivism in
biting people. In what appears to have been at least his fourth
and possibly seventh attack, he mauled and seriously injured
Dianne Moores while she was lawfully on premises at 316
Spring Street, Marshfield. Those premises belonged to Harley's
owners, Joan Cincotta and Michael Callahan. Moores had come
to the Cincotta/Callahan place as a business invitee to measure
their tennis court for seal coating. We are not, however,
concerned with canine malfeasance but with whether, under the
terms of its policy, the Quincy Mutual Fire Insurance Co.
(Quincy Mutual), the issuer of a homeowner's insurance policy
on property in Tuftonboro, New Hampshire, must defend Calla-

han and indemnify him (to the limits of its policy) as to liability in connection with the Marshfield dog bite. We decide Quincy Mutual is bound to defend Callahan and to indemnify him and reverse a Superior Court judgment declaring the contrary.[1]

We add a few more facts, culled from materials submitted in support of cross motions for summary judgment and the motion judge's memorandum of decision, about real estate properties in which Callahan had an interest and about the insurance he carried in connection with those properties. Cincotta and Callahan, who are friends, have lived at the Marshfield property for ten years and owned it together. Callahan also owned premises in Randolph (where it appears his wife, Patricia, lives) and, together with Patricia, owned a property in Tuftonboro, New Hampshire. As to each of those premises, there was in force a homeowner's insurance policy with personal liability coverage. The carrier of the insurance on the Marshfield property, Plymouth Rock Assurance Corp., has paid the limits of its policy, $500,000, to Moores and her husband, and the carrier on the Randolph property, New London County Mutual Insurance Co., paid its policy limits of $500,000. Neither company obtained a release for Callahan. Quincy Mutual's limit on personal liability under the Tuftonboro policy is $100,000.

The ground on which Quincy Mutual has declined to defend or indemnify Callahan is that the exclusions section pertaining to the personal liability coverage provides: "Coverage E — Personal Liability . . . do[es] not apply to bodily injury or property damage: . . . arising out of a premises []owned by an insured . . . that is not an insured location."[2] The question is whether the exclusion ought to be read as pertaining to anything that occurs on the off-policy premises or whether the exclusion is limited to accidents that occur because of a condition of the off-policy premises, such as a hole in a walkway, a loose step, defective plumbing, or faulty electric wiring.

There have been several recent opinions which have sought to explicate the meaning of the phrase "arising out of." They suggest the line of connection need not be as direct as proximate

---

[1]Callahan's complaint sought declaratory relief under G. L. c. 231, §§ 1 and 2.

[2]In the exchange of motions for summary judgment before the Superior Court, Quincy Mutual won, and a judgment was entered in its favor. Callahan brought this appeal. An action by Moores and her husband against Callahan is pending in the Superior Court.

cause. For an injury to "arise out of," it is enough if it is reasonably apparent that there is a causal connection between the injury and the use to which premises or a vehicle are put. See *Bagley* v. *Monticello Ins. Co.,* 430 Mass. 454, 457 (1999); *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.,* 430 Mass. 794, 797-798 (2000); *United Natl. Ins. Co.* v. *Parish,* 48 Mass. App. Ct. 67, 70 (1999). So, for example, in the most recent of those cases, *Ruggerio,* a heart attack patient died because the ambulance that was to come to his assistance was involved in an accident. The court concluded, 430 Mass. at 798, that the patient's death did not "arise out of" ownership of the insured vehicle and that the insurer, therefore, was not liable. These efforts to describe the reach of "arising out of" are only marginally helpful in deciphering the problem at hand. The question is less one of reach than it is of fit.

There are more clues in the Quincy Mutual policy itself. As is characteristic of a standard homeowner's policy, it has two categories of coverage: insurance against loss to property, including its use, and insurance against liability. Within liability coverage, there are, in turn, two categories: personal liability (Coverage E) and medical payments to others (Coverage F). Callahan seeks the protection of Coverage E, personal liability, under which the insurer contracts to pay to the limits of its policy "for the damages for which the insured is legally liable" and to provide a defense. The coverage is not confined to the insured premises. Had Harley bitten someone in front of the municipal building on Moraine Street in Marshfield, Callahan would be protected by the personal liability coverage of the Quincy Mutual policy on his New Hampshire property.

Concerning the medical payments to others coverage, the policy is more discriminating. It "applies only: 1. to a person *on* the insured location with the permission of the insured; or 2. to a person off the insured location, if the bodily injury: a. arises out of a condition on the insured location or the ways immediately adjoining; . . . d. is caused by an animal owned by or in the care of an insured."[3] What we learn from this text is that when the drafter considers the details, "arises out of" in the policy relates to a condition of a location; that the insurer differentiates what *arises out of* from what *occurs on*; and that

---

[3]We have supplied emphasis for the word "on" and omitted emphasis in the text that highlights defined terms such as "insured location" and an "insured."

bodily injury by an animal is covered on or off the insured premises.

Cincotta kept Harley for protection as Callahan was frequently away on business. The dog would, however, go off premises with Cincotta/Callahan from time to time, including to the New Hampshire place. The point is, Harley was not a condition of the Marshfield premises, as a protective electric fence would be. Harley's bite was no more connected to the Marshfield real estate than had Callahan spilled hot coffee on a guest on those premises. It happened there, but it did not "arise out of," as the phrase is understood. Callahan's liability stems from his harboring a vicious animal — i.e., personal tortious conduct — not any condition of the Marshfield premises.

Our view accords with the weight of authority. An example, also involving an off-policy premises dog bite, is *Lititz Mut. Ins. Co.* v. *Branch*, 561 S.W.2d 371, 373-374 (Mo. Ct. App. 1977), in which the court held that a very similar "arising out of" other than the insured premises exclusion applied to the condition of real property and its operation, not to an easily movable dog. "A dog, whether permanently kenneled or tethered on the property, is not a part of the premises." *Lititz, supra* at 373. The court made the point that personal liability coverage was without territorial limit, as in the instant case. Risk of tortious personal conduct, therefore, was not greatly expanded by an insured's ownership of other real property. On the other hand, the many personal risks incident to ownership of property — the loose board, the falling roof slate, the defect in the walkway, the failure of outdoor lighting — are distinctly greater when an insured owns additional real estate that the insurer has not inspected and assessed from the point of view of risk. *Lititz, supra* at 374.

The *Lititz* court cited with approval *Duggan* v. *Travelers Indem. Co.*, 383 F.2d 871, 875 (1st Cir. 1967), a dog bite case in which the court distinguished between a "result caused by the condition or operation or neglect of the premises or, more broadly, anything that happened on the premises." That an accident happened on the premises did not make it "in connection with" those premises.[4] Similarly, in *Safeco Ins. Co.* v. *Hale*, 140 Cal. App. 3d 347, 352-353 (1983), the court decided that the is-

---

[4]The court in *Duggan*, 383 F.2d at 875, raised the possibility of a different outcome in the case of a dog known to be dangerous and kept on the premises, or a dog kept to guard the premises. We do not think that the character of a

suer of a homeowner's policy to Alex and Sue Sally Hale in connection with their residence could not stand on the "arising out of" other premises exclusion when a horse escaped from the Hales's horseback riding business premises and caused a bad car accident. An animal, the court wrote, "is not within the fair connotation of the word 'premises.' " *Id.* at 353.[5]

We hold that the exclusion in the Quincy Mutual policy of

---

mobile animal or the principal purpose for which an owner keeps the animal changes the analysis of the circumstances in which the "arising out of" exclusion applies.

[5]Other cases that apply the "arising out of" other premises exclusion to a condition of or operation of the real property, but do not apply it to tortious personal acts, include: *Sea Ins. Co.* v. *Westchester Fire Ins. Co.*, 849 F. Supp. 221, 224-226 (S.D.N.Y. 1994), aff'd, 51 F.3d 22 (2d Cir. 1995) (car accident caused by individual in insured's employ); *Hanson* v. *General Acc. Fire & Life Ins. Corp.*, 450 So. 2d 1260, 1261-1262 (Fla. Dist. Ct. App. 1984) (electrocution while assisting the removal of an antenna); *Economy Fire & Cas. Co.* v. *Second Natl. Bank of Danville*, 91 Ill. App. 3d 406, 409 (1980) (fire); *Tacker* v. *American Family Mut. Ins. Co.*, 530 N.W.2d 674, 677 (Iowa 1995) (home remodeling work); *Eyler* v. *Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 857-858 (Ky. 1992) (employee rolling tires down a hill); *Dufrene* v. *Duncan*, 634 So. 2d 19, 22 (La. Ct. App. 1994) (dog bite did not arise "out of a condition on the insured premises"). Compare *Jackson* v. *Lajaunie*, 270 So. 2d 859, 864 (La. 1972) ("any act or omission in connection with the premises" is a broader exclusion than "arising out of the use of the premises for the purposes of a service station," and bars coverage of a handgun accident that occurred on the uninsured premises). See *Lanoue* v. *Fireman's Fund Am. Ins. Cos.*, 278 N.W.2d 49, 54 (Minn. 1979), overruled on other grounds by *American Standard Ins. Co.* v. *Dang Van Le*, 551 N.W.2d 923 (Minn. 1996) (exclusion for damage "arising out of any premises, other than an insured premises" did not exclude from coverage injury resulting from insured's careless possession of whiskey, consumed by minors who then were involved in an automobile accident); *Farmers Union Coop. Ins. Co.* v. *Allied Property & Cas. Ins. Co.*, 253 Neb. 177, 180-182 (1997) (dog bite in a traveling automobile did not arise out of the automobile's use). Cf. *Bianco* v. *Travelers Ins. Co.*, 99 A.D.2d 629, 629 (N.Y. 1984) (dog bite arose "out of any act or omission in connection with premises"); *Marshall* v. *Fair*, 187 W. Va. 109, 114 (1992) (unauthorized harvesting of timber); *Newhouse* v. *Laidig, Inc.*, 145 Wis. 2d 236, 240 (Ct. App. 1988) (farm machinery accident).

Compare *National Farmers Union Property & Cas. Co.* v. *Western Cas. & Sur. Co.*, 577 P.2d 961, 962-964 (Utah 1978). In that case a horse escaped from posse grounds because the main gate had been left open. Once out, the horse collided with an automobile, injuring a passenger. The court held the injury came within the "arising out of" other premises exclusion because the open gate, a condition of the premises, was the root cause of the accident. See also *Arndt* v. *American Family Ins. Co.*, 394 N.W.2d 791, 793-795 (Minn.), reversing 380 N.W.2d 885 (Minn. Ct. App. 1986) (farm machinery considered part of premises and exclusion applies); *St. Paul Fire & Marine Ins. Co.* v.

coverage for accidents arising out of premises owned by an insured that is not an insured location does not apply to a dog bite that occurred on the premises. The judgment entered in the Superior Court is vacated. A new judgment shall be entered declaring that Quincy Mutual is obligated to defend and, to its policy limits, indemnify Callahan in the action of Moores *vs.* Callahan, bearing number C.A. No. 96-0972A on the Superior Court docket in Plymouth County. Conformably with the decision in *Preferred Mut. Ins. Co.* v. *Gamache*, 426 Mass. 93, 97-98 (1997), Callahan shall have leave to apply in the Superior Court for his reasonable attorney's fees and expenses in connection with this declaratory judgment action.

*So ordered.*

*Ins. Co. of N. America*, 501 F. Supp. 136, 138-139 (W. D. Va. 1980) (intentionally set fire that damaged property bordering uninsured premises arose from the premises on which it was set).