94 P.3d 616

CALIFORNIA CASUALTY INSURANCE COMPANY, Plaintiff–Appellant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant–Appellee.

No. 1 CA–CV 03–0645.

Court of Appeals of Arizona, Division 1, Department B.

July 27, 2004.

The Cavanagh Law Firm, P.A. By Steven D. Smith, Christopher Robbins, Phoenix, Attorneys for Plaintiff–Appellant.

Mariano & Allen, P.L.C. By Lynn M. Allen, Rebecca J. Herbst, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

KESSLER, Judge.

¶1 California Casualty Insurance Company ("CCI") appeals the trial court's summary judgment in favor of American Family Mutual Insurance Company ("American"), in this equitable contribution action brought by CCI after it paid to settle a claim by a postal carrier bitten by American's insured's dog. The trial court ruled that the "owned premises" exclusion in the renter's insurance policy issued by American precluded coverage, and therefore precluded CCI's contribution claim. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Raul and Elvia Lujan (the "Lujans") reside in Phoenix, Arizona, in a home insured by CCI under a homeowners insurance policy. Their daughter, Diane, resided in Scottsdale, Arizona, with her roommate, Tracy,

who was the named insured on a renter's policy issued by American. Diane and Tracy owned a dog and asked the Lujans to dog-sit at the Lujans' house. On March 7, 1998, the dog bit Ronald Miner ("Miner"), the postal carrier, as he delivered mail to the Lujans' home. Miner sued the Lujans, and CCI settled the claim for its policy limit of $100,000. CCI then sought equitable contribution from American for a pro rata share of the defense costs and the $100,000 settlement. The parties filed cross-motions for summary judgment on the issue of whether American's policy provided coverage for the incident.

¶ 3 American conceded for purposes of CCI's motion for summary judgment that the Lujans are "insureds" pursuant to American's renter's insurance policy.[1] However, American argued that coverage for the dog bite was excluded pursuant to the "owned premises" policy exclusion, which provides as follows:

**Premises Owned Rented or Controlled. We** will not cover **bodily injury** or **property damage** arising out of any act or omission occurring on or in connection with any premises owned, rented or controlled by any **insured** other than an **insured premises.**

(Bold in original).

¶ 4 The trial court ruled that the "owned premises" exclusion applied and it granted judgment in American's favor. The court entered judgment in May 2002, and awarded attorneys' fees to American pursuant to Arizona Revised Statutes ("A.R.S.") section 12–341.01(A) (2003). Later, the trial court entered an amended judgment and again awarded attorneys' fees to American. CCI moved for a new trial or for reconsideration. The trial court denied the motion and awarded American additional attorneys' fees. We have jurisdiction over CCI's timely appeal. A.R.S. § 12–2101(B), (F)(1) (2003).

## DISCUSSION

■ ¶ 5 We review the trial court's grant of summary judgment, which is based upon its interpretation of American's renter's insurance policy, de novo. *Liristis v. Am. Family Mut. Ins. Co.*, 204 Ariz. 140, 142, ¶ 6, 61 P.3d 22, 24 (App.2002) (we review propriety of summary judgment de novo); *Arizona Biltmore Estates Ass'n v. Tezak,* 177 Ariz. 447, 448, 868 P.2d 1030, 1031 (App.1993) (issues of law, including contract interpretation, reviewed de novo). We construe the policy's provisions

according to their plain and ordinary meaning. *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982). "[A]mbiguity in an insurance policy will be construed against the insurer"; however, this rule applies only to provisions that are "actually ambiguous." *Thomas v. Liberty Mut. Ins. Co.*, 173 Ariz. 322, 325, 842 P.2d 1335, 1338 (App.1992). If a clause may be susceptible to different constructions, rather than simply finding ambiguity and resorting to the *contra proferentum* doctrine, we will first attempt to discern the meaning of the clause "by examining the purpose of the [clause] in question, the public policy considerations involved and the transaction as a whole." *Ohio Cas. Ins. Co. v. Henderson,* 189 Ariz. 184, 186, 939 P.2d 1337, 1339 (1997) (quoting *Transamerica Ins. Group v. Meere,* 143 Ariz. 351, 355, 694 P.2d 181, 185 (1984)).

*Keggi v. Northbrook Property & Cas. Ins. Co.*, 199 Ariz. 43, 46, ¶ 11, 13 P.3d 785, 788 (App.2000).

### A. "Insured Premises"

■ ¶ 6 American has conceded that the Lujans are "insureds" entitled to coverage for the dog bite, unless the "owned premises" exclusion applies. CCI contends that the "owned premises" exclusion does not apply because the Lujans' home qualifies as an "insured premises" under the policy. The renter's policy defines "insured premises" to include the location described on the declarations page (the rented apartment), and "any premises **you** use in connection with" that described location. (Emphasis in original).

---

1. The policy defines "insured" to include the named insured and others described in paragraph a, as well as "any person ... legally re- sponsible for a[n] ... animal owned by any person included in paragraph a. to which Section II Coverages apply."

That policy defines "you" as the "person or people shown as the named **insured** in the Declaration." (Emphasis in original). Only Tracy is listed on the Declaration page.

¶ 7 CCI contends that, when Tracy asked the Lujans to keep the dog at the Lujans' house, she was using the house "in connection with" her own insured apartment, thus bringing the Lujans' house within the renter's policy's definition of "insured premises." CCI also argues that, because Tracy's renter's insurance policy extends coverage to any person legally responsible for her dog, it must necessarily apply to cover incidents occurring wherever the dog is, because wherever the dog is located is a premise used "in connection with" the insured premises. Otherwise, CCI contends, insureds would be required to purchase a separate liability policy for dogs.

¶ 8 We disagree with CCI. The plain language of the policy does not support CCI's assertion. The word "connection" is commonly defined as a link, an association or a relationship. Random House Webster's College Dictionary 282 (2d ed.1999). Thus, for coverage to apply to premises not specifically described in the declarations, the policy requires a "link," "association," or "relationship" between the specifically insured premises and the additional premises. Here, there is no link, relationship, or association between the rented insured premises and the Lujans' house, other than the fact that Tracy's dog slept in both places. Simply put, while Tracy may have used the Lujans' house "in connection with" her dog, she did not use it "in connection with" her insured premises.

¶ 9 Although we have found no cases directly on point, this conclusion is supported by analogous cases. In determining whether premises are used "in connection with" insured premises, courts generally consider the proximity of the premises, the type of use of the premises, and the purpose of the insurance policy as a whole. *See, e.g., United Servs. Auto. Ass'n v. Parry*, 158 Ariz. 83, 86, 761 P.2d 157, 160 (App.1988); *Hudnell v. Allstate Ins. Co.*, 190 Ariz. 52, 55, 945 P.2d 363, 366 (App.1997). For example, the court in *Parry* considered whether a water retention area in the common area of the subdivi-

sion in which the insureds lived qualified as premises used by the homeowners "in connection with" the insured premises. 158 Ariz. at 85, 761 P.2d at 159. The court explained that the "two-fold purpose" of the area was "to collect and retain run off waters during the rainy season," and as a "recreational area that could be used and enjoyed by [residents] and their guests." *Id.* at 86, 761 P.2d at 160. Because the area was owned by the homeowner's association, designed for collection of run-off water, and located some distance from the insureds' residence, the court concluded that it was not a "premise" "used in connection with" the insured home. *Id.*

¶ 10 Similarly, in *Hudnell* the court considered whether injuries caused by a dirt bike crash on a roadway adjacent to the insureds' home were covered under a homeowners policy. 190 Ariz. at 54, 945 P.2d at 365. The insureds argued that the adjacent roadway should be considered part of the homeowners' insured "premises" because it had been used to test-drive the dirt bike after making repairs on the insured premises. *Id.* The court noted that the purpose of a vehicle exclusion in a homeowners policy is to require the insured to obtain separate automobile insurance. *Id.* at 56, 945 P.2d at 367. The court explained that interpreting the policy to "extend[ ] coverage to any instance where the insured chooses to use a public street to continue an activity he performed on his residence premises" would "blur[ ] the distinction between homeowners and automobile insurance." *Id.* In short, because extending coverage under the "in connection with" provision would essentially eliminate the vehicle exclusion, the court declined to broadly construe the "in connection with" provision.

¶ 11 Here, the purpose of the "owned premises" clause is to require the insured to obtain specific liability insurance for each premises owned. *Cf. Hudnell*, 190 Ariz. at 56, 945 P.2d at 367 (explaining that purpose of vehicle exclusion in homeowners policy is to require insured to obtain specific liability insurance on motor vehicles). This allows the insurer to more accurately assess the risks associated with the insured premises

and to set an appropriate premium. If an insured could convert any other "owned premises" into "insured premises" merely by having a dog sleep there temporarily, there would be no limit to the insurance policy's coverage. An insured could purchase any number of homes, keep her animals in them, and claim that these additional homes were being used "in connection with" the insured premises, thereby obtaining insurance for all of the homes for the price of a single premium. We decline to construe the provision providing coverage for "use in connection with" insured premises so broadly that it would eliminate the "owned premises" exclusion.

¶ 12 CCI also contends that "it is illogical to conclude that the policy was intended to cover the Lujans only when they cared for the dog at Tracy's apartment," and not when they were in their own home. We disagree. Assuming that the "owned premises" exclusion applies, it is not illogical to apply it. Just as a homeowners policy may exclude liability arising from the use of an automobile because an insured is expected to separately insure his automobile, the policy may also exclude liability arising from acts occurring on "owned premises" not listed in the declarations page, because the insured is expected to separately insure those other premises. In other words, by making the Lujans "insureds" under the policy based upon their care of the dog, American agreed to cover their liability for dog bites subject to the same exclusions that would apply to any other insured, including the "owned premises" exclusion.[2]

### B. "Owned Premises" Exclusion

■ ¶ 13 The "owned premises" exclusion precludes coverage for "bodily injury or property damage arising out of any act or omission occurring on or in connection with any premises owned ... by any insured other than an insured premises." (Emphasis omitted). CCI argues that the trial court erred by finding that the "owned premises"

exclusion applies to liability for tortious personal conduct that occurred on a dog-sitter's property.

¶ 14 American admitted that the Lujans qualified as insureds under the policy because they were caring for Tracy's dog. This fact, however, does not require coverage for all liability incurred because of the dog. Rather, it means that the Lujans are entitled to the coverage provided in the policy, subject to the same exclusions applicable to all insureds. Thus, the renter's policy would cover the Lujans' liability for injuries caused by the dog everywhere *except* where the policy specifically excludes coverage: for "bodily injury or property damage arising out of any act or omission occurring on or in connection with any premises owned ... by any insured other than an insured premises." (Emphasis omitted).

¶ 15 CCI cites several cases in support of its argument that the "owned premises" exclusion does not apply to liability arising from injuries inflicted by an insured's animal. *See, e.g., Duggan v. Travelers Indem. Co.,* 383 F.2d 871 (1st Cir.1967) (finding coverage for dog bite occurring on business premises); *Callahan v. Quincy Mut. Fire Ins. Co.,* 50 Mass.App.Ct. 260, 736 N.E.2d 857 (Mass. App.Ct.2000) (finding coverage for dog bite that occurred on uninsured premises); *Lititz Mut. Ins. Co. v. Branch,* 561 S.W.2d 371 (Mo.Ct.App.1977) (same). These cases are unpersuasive, however, because the policy language at issue in them differs materially from the language at issue in American's policy.

¶ 16 In *Callahan,* the policy excluded coverage for "bodily injury ... arising out of a premises [ ]owned by an insured ... that is not an insured location." 50 Mass.App.Ct. at 261, 736 N.E.2d at 858. The court held that the dog bite did not "arise out of" the premises because "[a] dog, whether permanently kenneled or tethered on the property, is not a part of the premises." *Id.* at 859 (quoting *Lititz,* 561 S.W.2d at 373). The court specifically distinguished between injury that

---

2. This conclusion is supported by the policy definitions which limit the "insured premises" to any premises **you** [the insured named in the Declaration page, *i.e.,* Tracy] use in connection with the

described location. Thus, the fact the Lujans are "insureds" does not mean that their home was an "insured premises" as defined by the policy.

"arises out of" premises and injury that "occurs on" premises. *Id.* The court noted that Callahan's liability "stems from his harboring a vicious animal—*i.e.,* personal tortious conduct—not any condition of the Marshfield premises." *Id.*

¶ 17 Similarly, in *Lititz,* the policy excluded coverage for bodily injury "arising out of [owned but not insured] premises." 561 S.W.2d at 373 n. 1. As in *Callahan,* the court interpreted the "arising out of" language to require a causal connection between the premises and the injury, and concluded that "[i]t cannot … be said that a dog bite arises out of, originates from, grows out of, or flows from the premises. That it occurs upon the premises does not establish a causal connection between the bite and the premises." *Lititz,* 561 S.W.2d at 373.

¶ 18 In *Duggan,* the policy excluded coverage for "any act or omission in connection with (business) premises." 383 F.2d at 875. The court held there was no causal connection between the business premises and the dog bite, because the dog was not usually kept there but was only there temporarily. *Id.* Thus, the "accident could as well have happened on the streets or in a store. That it happened on business premises did not make it 'in connection with' those premises." *Id.* These cases are consistent with Arizona authority requiring a "causal connection" between the vehicle and the injury in interpreting homeowners policy provisions excluding coverage, (and automobile insurance policies providing coverage), for injury "*arising out of* the ownership, maintenance, [or] use" of a vehicle. *See, e.g., Allstate Ins. Co. v. Johnston,* 194 Ariz. 402, 403, ¶¶ 3 & 8, 984 P.2d 10, 11 (1999) (emphasis added).

¶ 19 The American policy's "owned premises" exclusion, however, excludes coverage for injury "arising out of any act or omission" both "in connection with" owned and uninsured premises, and "occurring on" owned and uninsured premises. The exclusion is thus broader than those analyzed in *Callahan, Lititz,* and *Duggan.* As the court in *Lititz* explained, "The company has not chosen to geographically limit the coverage provided for tortious personal conduct of the insured. If it had so intended, it could sim-

ply have provided that the exclusion ran to an accident 'occurring on' other owned premises." 561 S.W.2d at 374. Unlike the insurer in *Lititz,* American has chosen to geographically limit the coverage provided for tortious personal conduct of the insured, excluding coverage for tortious acts "occurring on" owned but uninsured premises. There is no dispute in this case that the dog bite "occurred on" owned and uninsured premises. Coverage is therefore excluded.

¶ 20 Our conclusion is also supported by *Bianco v. Travelers Ins. Co.,* 99 A.D.2d 629, 630, 472 N.Y.S.2d 184, 185 (N.Y.App.Div. 1984). There, the named insured had rented housing which was not insured under the policy. The insured's dog bit a visitor to the uninsured residence. In affirming judgment for the insurer, the appellate court interpreted policy language that excluded coverage for injury "arising out of any act or omission in connection with premises (other than an insured premises) owned, rented or controlled by" an insured. The court concluded that, "[w]hile the … injury did not arise out of any defect in the uninsured premises, there can be little doubt that the injury arose 'in connection' with the premises." *Id.* However, the court also held that this policy language was clear that the residence where the injury occurred was not an insured premises. The same is true here.

¶ 21 Finally, CCI contends that the liability-causing act or omission was the Lujans' and Tracy's failure to properly train or restrain the dog, and that this act cannot be deemed to have occurred on any particular piece of property. They contend that the tortious act of failing to train or restrain the dog must be covered "regardless of where the act takes place." *See, e.g., MFA Mut. Ins. Co. v. Nye,* 612 S.W.2d 2, 5 (Mo.Ct.App. 1980). While the failure to properly train the dog might have occurred anywhere, we note that CCI seeks contribution only for its settlement payment to Miner on the Lujans' behalf. CCI never alleged any theory of contribution based upon Tracy's negligence in training the dog, but alleged only that both American and CCI insured the Lujans. Thus, Tracy's liability (if any) for failing to properly train the dog is not at issue. The

Lujans' failure to properly restrain the dog did in fact "occur on" the Lujans' owned but not insured premises. Moreover, unlike the policy analyzed in *MFA,* which contained the "arising out of" language in the owned premises exclusion, the "owned premises" exclusion in American's policy specifically excludes coverage for tortious acts "occurring on" owned but uninsured premises. Therefore, as noted above, the policy has geographically limited the scope of American's liability, and does not cover tortious acts "regardless of where the act takes place." Tracy could not purchase a separate home, fail to insure it under the renter's policy, keep her dog there, and expect American to cover her liability for dog bites occurring on the premises. The Lujans are not entitled to any greater protection. We affirm the trial court's judgment in favor of American.

## C. Attorneys' Fees

### 1. Trial Court

¶ 22 Arizona Revised Statutes section 12–341.01(A) provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." CCI contends that the trial court erred in awarding attorneys' fees to American based upon this statute because this is not an action "arising out of a contract." CCI asserts that there is no contract between it and American, that its equitable contribution claim sounds in tort, and that American's defense based upon the terms of its insurance contract with its insured does not convert the claim to one "arising out of a contract." *See, e.g., Benjamin v. Gear Roller Hockey Equip. Inc.,* 198 Ariz. 462, 466, ¶ 23, 11 P.3d 421, 425 (App. 2000) (holding defendant not entitled to attorneys' fees when it raised written contractual release as defense to negligence action).

¶ 23 Cases interpreting section 12–341.01(A) focus on the substance of the action rather than its label. *See A.H. v. Arizona Property & Cas. Ins. Guar. Fund,* 190 Ariz. 526, 530, 950 P.2d 1147, 1151 (1997) (stating that section 12–341.01(A) applies to coverage disputes between insured and Insurance

Guaranty Fund because "the Fund's obligation is determined under the underlying insurance contract"). In *A.H.,* the court considered whether litigation focusing on a statutory offset provision arose out of a contract, and held that it was a contract claim, not a statutory claim, even though the issue involved an "element of statutory interpretation." *Id.*

¶ 24 In this case, as in *A.H.,* the issue whether CCI is entitled to equitable contribution is determined by considering the terms of the insurance contract between American and its insured. *See, e.g., Mutual Ins. Co. v. Am. Cas. Co.,* 189 Ariz. 22, 25, 938 P.2d 71, 74 (App.1996) (holding contribution appropriate upon proof of three elements: (1) the two insurers insure the same risk; (2) the loss sustained must be caused by the risk insured against; and (3) neither insurer is the primary insurer). This is not a tort claim in which the defendant has argued that a contractual release bars recovery. *See Benjamin,* 198 Ariz. at 466, ¶ 23, 11 P.3d at 425. Nor is the contract peripheral to the real issue between the parties. *See, e.g., Kennedy v. Linda Brock Automotive Plaza, Inc.,* 175 Ariz. 323, 325–26, 856 P.2d 1201, 1203–04 (App.1993) (holding claim for defective vehicle arose under "lemon law" statute, not out of lease contract, even though lease was factual predicate for claim). CCI's contribution claim required CCI to prove that American insured the same risk it insured— in other words, that the Lujans had a right to recover under the American insurance policy. Thus the claim arises out of a contract. *See Western Agr. Ins. Co.,* 172 Ariz. at 597, 838 P.2d at 1358 (awarding fees under section 12–341.01 in equitable contribution action between insurers without analyzing issue whether case "arises out of a contract"); *cf. John Deere Ins. Co. v. West American Ins. Group,* 175 Ariz. 215, 218–19, 854 P.2d 1201, 1204–05 (App.1993) (awarding attorneys' fees to prevailing insurer under section 12–341.01 in declaratory judgment action determining which insurer provided primary coverage under Arizona's financial responsibility statutes and without analyzing whether claim "arises

out of a contract"). The trial court did not err in awarding attorneys' fees to American.

### 2. Appeal

¶ 25 American requests an award of attorneys' fees incurred on appeal, as the prevailing party in a contract action pursuant to A.R.S. § 12–341.01(A). In our discretion, we grant American's request for reasonable attorneys' fees, upon its compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.

### CONCLUSION

¶ 26 For the foregoing reasons, we affirm the trial court's judgment in favor of American.

CONCURRING: MAURICE PORTLEY, Presiding Judge and PATRICK IRVINE, Judge.