NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TONYA TONDU, et al., *Plaintiffs/Appellants,*

*v.*

STATE FARM FIRE AND CASUALTY COMPANY, *Defendant/Appellee.*

No. 1 CA-CV 17-0444
FILED 7-17-2018

Appeal from the Superior Court in Maricopa County
No. CV2014-007940
The Honorable James T. Blomo, Judge (Retired)

**AFFIRMED**

COUNSEL

Riggs Ellsworth & Porter PLC, Mesa
By Robert L. Greer
*Counsel for Plaintiffs/Appellants*

Resnick & Louis PC, Scottsdale
By Michael R. Altaffer, Dane A. Dodd
*Counsel for Defendant/Appellee*

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James P. Beene joined.

**C A M P B E L L**, Judge:

¶1          Appellants Tonya Tondu and Michael Theisen sued Appellee State Farm Fire and Casualty Company for breach of contract and bad faith after their home suffered severe fire damage. Appellants challenge the superior court's ruling granting judgment as a matter of law on their bad faith and punitive damages claims at the close of their case-in-chief at trial. They also challenge the court's ruling excluding a report prepared by an appraiser retained by State Farm and its decision to not give their proposed jury instructions regarding the additional living expenses ("ALE") provision of their policy. We affirm on all issues raised.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2          Tondu and Theisen owned a home insured under a State Farm homeowners' insurance policy that provided structure, personal property, and loss of use/ALE coverage (the "Policy"). Tondu resided at the home, but Theisen did not. The policy limits were $312,700 for the dwelling with a $31,270 extension and $234,525 for personal property. The Policy also contained a special $1,000 limit of liability for property "used or intended for use in a business." The Policy provided ALE coverage as follows:

> When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months.

¶3          Two fires occurred at the house, one on the evening of October 25, 2010, and the second the following evening. Appellants planned to build a new, larger home using both the structure and personal property proceeds with Theisen performing the work. They submitted a claim under the Policy and retained public adjuster Loss Consultants, Inc., to assist with the claim.

¶4          State Farm tendered $271,307.46 for the structure in January 2011. State Farm retained Sun-Brite, a contents restoration company, to prepare an initial personal property inventory and made advance payments on the personal property claim in November and December of 2010 totaling approximately $40,000. In February 2011, Appellants, through

2

Loss Consultants, provided a separate personal property inventory containing more than 5,500 items, including numerous photographs and pieces of photography equipment. The photography items were adjusted at that time as personal property, not business property.

¶5　　　　State Farm issued an additional $56,026.24 personal property payment in April 2011. Appellants and Loss Consultants disputed who should receive the payment, and Loss Consultants wrote State Farm to demand that it "direct any and all future checks to this office and include Loss Consultants as an additional payee" until otherwise notified. State Farm filed an interpleader action and deposited $97,382.95 with the superior court. Once that action was resolved, State Farm paid an additional $15,115.21.

¶6　　　　State Farm also agreed to provide Tondu daily ALE benefits starting in November 2010. Tondu asked State Farm to continue providing benefits in September 2011 because construction was not complete and 24 months had not yet passed. State Farm retained a third-party contractor who estimated that it would have taken approximately eight months to rebuild the house as it existed before the fire. State Farm then extended ALE benefits through January 31, 2012, reflecting a total of 19 months of benefits. Despite further requests from Appellants, State Farm did not extend ALE benefits beyond January 2012.

¶7　　　　The parties also continued to dispute the personal property claim, leading Appellants to request an appraisal in December 2012. The Policy's appraisal provision states as follows:

> If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. . . . The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss.

Appellants identified Rae Young as their appraiser in February 2013, and State Farm identified Tom Helms in April 2013. When Helms withdrew from consideration, State Farm replaced him with Kirsten Smolensky.

¶8　　　　During the appraisal process, Smolensky emailed a State Farm adjuster, asking, "do we know whether one of the insured[s] was a professional photographer?" The adjuster responded that she was "not aware of this and ha[d] no notes in the file." Smolensky then posed the same

3

question to Young's office; Young's assistant responded that Tondu "does have a photography business so it makes sense for the immense amount of photos." Smolensky then told State Farm she would "appraise all of the photographs, negatives and expensive photography equipment at replacement cost, but this will likely raise a coverage issue" and that she would "note which items I believe may be relevant to this issue." State Farm's counsel then notified Appellants' counsel of the Policy's $1,000 business property limit and requested that Appellants "go through the contents inventory and identify exactly which items are business related and which are not." Appellants did not respond.

¶9　　　　In November 2013, Young and Smolensky issued a joint award in which they valued approximately 75 personal property items, concluded that "both of [their] separate investigative appraisals/valuations of the Personal Property Contents were considerably over policy limits," and recommended that State Farm pay $82,613.45, which was the remainder of the personal property policy limits at that time. State Farm instead paid $61,580.23, having deducted the value of some photography items from the total as business property as well as an earlier ALE overpayment.

¶10　　　　Appellants demanded that State Farm pay the remainder of the personal property policy limits, arguing that Tondu had not worked as a professional photographer for more than 10 years. They then sued State Farm in May 2014, alleging breach of contract and insurance bad faith.

¶11　　　　The case proceeded to a jury trial, during which the parties stipulated to judgment in State Farm's favor on Theisen's personal property and ALE claims. Appellants also sought to introduce a portion of a report Smolensky prepared for State Farm during the appraisal process. The court sustained State Farm's foundation objection, but noted the parties' expectation that Smolensky's deposition testimony would be presented later in the case. Appellants' counsel later requested that State Farm read Smolensky's deposition into evidence out of order, which State Farm refused to do, stating that it would "wait for [Appellants] to finish their case before we call any of our witnesses."

¶12　　　　Appellants renewed their request for admission of the Smolensky report after they presented their last witness. State Farm again objected, contending the exhibit was incomplete. State Farm also objected to a partial reading of Smolensky's deposition to establish foundation for the exhibit. The court ruled as follows:

As far as that portion dealing with Miss Smolensky and her testimony, I guess the concern that I have is that it wasn't one of your witnesses . . . . I think the only way to kind of really get around that is you wanted to read the entirety of the transcript, which hasn't been dealt with, and -- but it would come out of the time that you do have, which I calculate to be about just under two hours remaining, which I don't know how long it would chew up of your time to do this. So I'm guessing probably an hour plus, which would leave you cross-examination and closing arguments, so -- and that's being somewhat generous on the time. So I assume that's not how you want to use your time.

Appellants did not read Smolensky's deposition into evidence.

¶13        State Farm moved for judgment as a matter of law at the close of Appellants' case-in-chief. The court granted State Farm's motion as to Appellants' structure, bad faith, and punitive damages claims. The jury subsequently returned a defense verdict on Tondu's breach of contract claim. Appellants appealed after the superior court granted their motion to extend the notice of appeal deadline.

## DISCUSSION

### I.        The Superior Court Did Not Err in Granting Judgment as a Matter of Law on Appellants' Bad Faith Claims.

¶14        An insurer owes its insureds a duty to act in good faith for their benefit; a breach of that duty may result in a claim for bad faith. *Sobieski v. American Standard Ins. Co. of Wis.*, 240 Ariz. 531, 534, ¶ 10 (App. 2016). We review de novo the court's grant of judgment as a matter of law on Appellants' bad faith claims. *Newman v. Select Specialty Hosp.-Ariz., Inc.*, 239 Ariz. 558, 562, ¶ 9 (App. 2016). Judgment as a matter of law is improper if there was sufficient evidence from which reasonable jurors could have concluded that State Farm acted unreasonably in the investigation, evaluation, and processing of the claim and either knew or was conscious of the fact that its conduct was unreasonable. *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 238, ¶ 22 (2000).

#### A.        State Farm Did Not Act in Bad Faith in the Appraisal Process.

¶15        Appellants first contend State Farm acted in bad faith in the appraisal process by selecting Smolensky, who they contend was not

"disinterested" as required by the Policy because she considered coverage issues. Appellants cite Smolensky's emails in which Young's assistant told her that Tondu had a photography business and she reported that information to State Farm. Even assuming the identification of a coverage issue suggests bias on Smolensky's part, Appellants do not cite any evidence showing that State Farm knew of this alleged bias before appointing her.

¶16            Appellants' reliance on *Gebers v. State Farm General Ins. Co.*, 38 Cal. App. 4th 1648 (1995) is misplaced. There, the plaintiffs opposed confirmation of an appraisal award with uncontested evidence that State Farm's appraiser "was currently retained by State Farm as an expert witness in two pending court actions." *Id*. at 1652. The California Court of Appeals concluded these engagements constituted "a direct pecuniary interest which casts considerable doubt on the appraiser's ability to act impartially." *Id*. Here, however, Appellants offered no evidence to show Smolensky served as an expert witness for State Farm in any other matters or that she had a direct pecuniary interest in the outcome of the appraisal.

¶17            Appellants also contend Smolensky "added an exhibit to the appraisal of items considered, knowing that photography accoutrements were among them." The record does not support this contention. Young testified that both appraisers contributed to the exhibit that accompanied their award, which included a "top 40" list of disputed items Young prepared. Young also testified that she and Smolensky agreed to use a smaller personal property list for the appraisal because evaluating the entire inventory would have been impractical.

¶18            Appellants also contend the superior court erred in not admitting Smolensky's separate report to State Farm, arguing that it demonstrated State Farm's bad faith. We will reverse a ruling excluding evidence only if Appellants informed the superior court of the evidence's substance by offer of proof, unless the substance was apparent from context, and the ruling affected a substantial right. Ariz. R. Evid. 103(a); *Elia v. Pifer*, 194 Ariz. 74, 79, ¶ 22 (App. 1998).

¶19            Appellants made an adequate offer of proof by describing the relevant contents of Smolensky's report and explaining why they believed the report should be admitted. We thus must determine whether its exclusion affected Appellants' substantial rights. *See, e.g., Gasiorowski v. Hose*, 182 Ariz. 376, 382 (App. 1994) ("Exclusion of evidence, though improper, is not grounds for reversal if 'in all probability its admission

would not have changed the result.'") (quoting *Graham v. Vegetable Oil Prods. Co.*, 1 Ariz. App. 237, 243 (1965)).

¶20            Appellants first contend Smolensky's report "confirms that the appraisers agreed that the disputed contents value was . . . over policy limits." That fact was already in the record via Young's testimony and the appraisal award itself, which State Farm did not contest.

¶21            Appellants also contend Smolensky's report shows she used "a different approach from State Farm's valuation and depreciation schedules," which they say is "*prima facie* evidence of . . . unreasonableness and therefore, bad faith." Even assuming this is true, Smolensky's use of different schedules would not by itself establish that any schedule State Farm may have used was unreasonable. Appellants introduced no evidence at trial to show State Farm's schedules were unreasonable. Appellants thus do not show the exclusion of Smolensky's report prejudiced them or affected their substantial rights.

### B.       State Farm Did Not Act in Bad Faith by Interpleading Personal Property Funds.

¶22            Appellants next contend State Farm acted in bad faith by interpleading "more than the sum in controversy." Appellants also contend State Farm should have interpleaded only the maximum amount Loss Consultants could have received under its agreement with Appellants because it had a copy of their agreement. The record demonstrates that the sum in controversy between Appellants and Loss Consultants was not clear at the time, as Loss Consultants demanded that State Farm "direct any and all future checks to [Loss Consultants]." Accordingly, State Farm, who had no interest in the underlying dispute between Appellants and Loss Consultants, interpled all future payments as they became due.

¶23            Appellants cite no authority that would obligate a party to take any steps to resolve or clarify the scope of an underlying dispute before filing an interpleader action. *See, e.g., Ariz. Bank v. Wells Fargo Bank, N.A.*, 148 Ariz. 136, 140-41 (App. 1985) (stakeholder may interplead funds if "1) it has no interest in the fund or property in dispute; 2) multiple defendants claim the same debt from the plaintiff; 3) the adverse rights asserted arise from a common source; 4) the stakeholder has no independent liability to either of the claimants; and 5) the stakeholder has no other adequate remedy to protect itself from litigation in which it has no interest"). This being so, State Farm was well within its rights to ask the court to hold the

funds until the underlying dispute to which they were not a party was resolved.

### C. State Farm Did Not Adjust the Personal Property Claim in Bad Faith.

¶24    Appellants next contend State Farm acted in bad faith by "dragg[ing] its feet" in evaluating the personal property, arguing that "[i]t took less than a month for Sun-Brite to examine, document, identify, photograph, and verify the existence of the damaged personal property" and that "[i]t then took Loss Consultants less than sixty days to identify where property was purchased, when it was purchased, and for how much." Appellants overlook that the Policy obligated them to "prepare an inventory of damaged . . . property" and "[s]how in detail the quantity, description, age, replacement cost and amount of loss." It was State Farm, not Appellants, who retained Sun-Brite to prepare the initial personal property inventory. The record also demonstrates that State Farm made four advance payments before it even received Loss Consultants' inventory. It then paid an additional $56,026.24 in April 2011, which led to the dispute between Appellants and Loss Consultants. Appellants do not suggest State Farm had any role in that dispute. Moreover, the record suggests that Tondu asked State Farm to not issue any further payments until the dispute was resolved.

¶25    Appellants also contend the appraisers "took four months" to evaluate the personal property "while applying depreciation." As explained during trial, the appraisers did not evaluate the entire personal property inventory item by item. Indeed, Young—the appraiser retained by Appellants themselves—testified that engaging in such a comprehensive evaluation could have taken up to two years. In any event, State Farm issued the last personal property payment approximately one month after the appraisers issued their award. The prompt payment of the outstanding amount by State Farm and the lack of evidence provided by Appellants illustrating this timeframe was unreasonable by industry standards precludes any implication State Farm was acting in bad faith.

¶26    Appellants next contend State Farm acted in bad faith by determining Tondu's "photography-centered property" was business property subject to the special $1,000 limit "after the appraisal, with minimal investigation." Appellants also cite no evidence to support their contention that State Farm "arbitrarily select[ed] property with the highest cost as business property while leaving as personal property other items, more closely related to the profession of photography," having accused

Smolensky of doing the same earlier in their appellate brief. As noted above, Young's office provided the information that led to this determination during the appraisal process. State Farm notified Appellants of the coverage issue and asked them to "identify exactly which items are business related and which are not." Appellants did not respond. Had they disputed the issues, they had a duty to dispel the assertion that items were in fact business related. Additionally, Appellants cite no evidence to support their contention that State Farm selected the highest priced items to identify as business property subject to the policy limitation. Again, State Farm's actions do not give rise to any implication of bad faith.

### D. The Superior Court Properly Granted Judgment as a Matter of Law on Theisen's Bad Faith Claim.

¶27 Appellants next contend the court erred in granting judgment on Theisen's bad faith claim. They conceded below that Theisen had no personal property or ALE claims. They theorize, however, that Theisen may recover for State Farm's delays in paying Tondu's personal property claim because he, like Tondu, intended to use those funds to finance the new construction. We are aware of no authority—and Appellants cite none— that would allow one policyholder to recover for an insurer's bad faith in handling another policyholder's claim.

### E. State Farm Did Not Interpret the Policy's ALE Provision in Bad Faith.

¶28 Finally, Appellants contend State Farm acted in bad faith by "insert[ing] a 'reasonable time' requirement" into the ALE provision. We construe the ALE provision according to its plain and ordinary meaning. *Cal. Cas. Ins. Co. v. Am. Family Mut. Ins. Co.*, 208 Ariz. 416, 418, ¶ 5 (App. 2004). Additionally, "an insurer's reasonable but incorrect policy interpretation does not, by itself, constitute bad faith." *Desert Mountain Properties Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 215, ¶ 94 (App. 2010) (citing *Aetna Cas. & Sur. Co. v. Superior Court,* 161 Ariz. 437, 440 (App. 1989)).

¶29 The ALE provision obligated State Farm to "cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months" limited to the shortest of "(a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months." Should the court adopt Appellants' interpretation of the contract language, State Farm would have been obligated to provide 24 months of ALE in all cases where the insured

exercises a unilateral choice to change the structure insured by the policy. The provision, however, only covers "the necessary increase in cost you incur to maintain your standard of living." While Appellants' decision to build something larger undoubtedly increased the time needed to build and, therefore, the cost of maintaining Tondu's standard of living, Appellants did not show that it was a "necessary" increase in cost. We thus do not find State Farm's interpretation of the Policy's ALE provision to be unreasonable.

¶30          On these bases, we conclude the superior court did not err in granting judgment as a matter of law on Appellants' bad faith claims regarding the ALE payments. *See Aetna*, 161 Ariz. at 440 ("[T]here are times when the issue of bad faith is not a question appropriate for determination by the jury.").

## II.     The Superior Court Properly Granted Judgment as a Matter of Law on Appellants' Punitive Damages Claims.

¶31          Appellants also challenge the court's ruling granting judgment as a matter of law on their punitive damages claims. To recover punitive damages, Appellants must come forward with more than what is needed to prove bad faith; they must prove by clear and convincing evidence that the insurer acted with an evil mind. *Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, 517, ¶ 38 (App. 2006) (citation omitted). As set forth above, and based on this record, Appellants have failed to provide any evidence of bad faith, much less evidence that State Farm acted with "an evil mind." Because we affirm the entry of judgment as a matter of law on Appellants' bad faith claims, we do the same as to their punitive damages claims.

## III.    The Superior Court Did Not Abuse Its Discretion in Declining to Issue Appellants' ALE Provision Jury Instructions.

¶32          Appellants also challenge the court's refusal to give either of their two proposed jury instructions regarding the Policy's ALE provision. Appellants' first proposed instruction read as follows:

> The court has interpreted the plain language and ordinary meaning of the policy language in Coverage C, and found that it is reasonably susceptible to either Plaintiffs' or State Farm's interpretations. That is, the 'time required to repair or replace the premises' could be read to mean either: (1) that State Farm was obligated to pay ALE Benefits until such time as Plaintiffs' home was actually repaired or

replaced; or (2) that State Farm was obligated to pay the benefits only for so long a period of time as was reasonably estimated *would be* required to repair or replace the home.

Because ambiguities are resolved in favor of the insured, the court instructs you that State Farm was obligated to pay ALE Benefits up until such time as Plaintiffs' home was once again fit for habitation, up to 24 months.

The second read as follows:

The court has interpreted the plain language and ordinary meaning of the policy language in Coverage C and instructs you that State Farm was obligated by the policy to pay ALE benefits not for its estimate of a reasonable time, but up until such time as Plaintiffs' home was once again fit for habitation, up to 24 months.

The court declined to give either instruction and directed counsel to address the issue in closing arguments.

**¶33**        The court must give a requested jury instruction if "(1) the evidence presented supports the instruction, (2) the instruction is proper under the law, and (3) the instruction pertains to an important issue, and the gist of the instruction is not given in any other instructions." *Brethauer v. Gen. Motors Corp.*, 221 Ariz. 192, 198, ¶ 24 (App. 2009) (citation omitted). That said, the superior court has substantial discretion in determining how to instruct the jury. *Smyser v. City of Peoria*, 215 Ariz. 428, 439, ¶ 33 (App. 2007). We review the refusal to give a requested instruction for an abuse of discretion and will not reverse absent resulting prejudice. *Brethauer,* 221 Ariz. at 198, ¶ 24; *see also Smyser*, 215 Ariz. at 439, ¶ 33 ("We will not overturn a verdict unless we have substantial doubt about whether the jury was properly guided.") (citation omitted).

**¶34**        We find no abuse of discretion for three reasons. First, neither of the requested instructions had anything to do with the evidence presented at trial; they instead stated Appellants' preferred interpretation of the ALE provision, which Appellants argued to the jury in closing.

**¶35**        Second, the superior court instructed the jury on the elements of Tondu's breach of contract claim and that it should award "[t]he amount of unpaid benefits of the insurance policy which . . . Tondu is entitled to receive" if it found State Farm liable. Under these instructions, the jury could have found that State Farm breached its ALE obligations and

awarded Tondu additional benefits. The instructions thus provided the jury with the proper rules for reaching its decision. *See Andrews v. Fry's Food Stores of Ariz.*, 160 Ariz. 93, 95 (App. 1989) ("[T]he test is whether the whole charge provided the jury with the proper rules for its decision making."); *see also Smedberg v. Simons*, 129 Ariz. 375, 377-78 (1981) ("It is not error for the court to refuse to give requested instructions adequately covered elsewhere by instructions which are given.") (citation omitted).

¶36　　　　Third, Appellants do not show that they suffered any prejudice. *See Brethauer*, 221 Ariz. at 200, ¶ 29 ("[T]he prejudicial nature of the error will not be presumed but must affirmatively appear from the record.") (citation omitted). They instead contend the superior court should have issued their requested instruction because interpretation of a contract is a question of law. But they cite no authority suggesting that the court must instruct the jury regarding one party's preferred contractual interpretation. *See Porterie v. Peters*, 111 Ariz. 452, 458 (1975) ("[I]t is not necessary for the trial judge to instruct on every refinement suggested by counsel. Instructions are not given to aid one side or the other in jury argument."). Moreover, they did not seek judgment as a matter of law on this issue before, during, or after trial. They cannot now complain that the jury did not agree with their position.

## CONCLUSION

¶37　　　　We affirm the superior court's rulings. State Farm is the successful party on appeal and may recover its taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA

12