# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3170
_____

Barbara Eichholz; Joshua Alan Eichholz; Dakota Ray Gilpin

*Plaintiffs - Appellees*

v.

Secura Supreme Insurance Company

*Defendant - Appellant*

_____

No. 12-4032
_____

Barbara Eichholz; Joshua Alan Eichholz; Dakota Ray Gilpin

*Plaintiffs - Appellants*

v.

Secura Supreme Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

Submitted: September 26, 2013
Filed: November 14, 2013

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Angela and Rodney Gilpin were murdered inside an apartment building owned and operated by Dennis and Sandra Prenger (collectively, the "Prengers"). Plaintiffs, survivors of the victims, obtained wrongful death judgments against the Prengers in state court. The state court found that the Prengers breached their landlord-tenant duty to provide security to their tenant (Angela) and her guest (Rodney) and awarded Plaintiffs $4 million in total damages.

In this diversity case, Plaintiffs filed an equitable garnishment action in Missouri state court, later removed to federal court, to recover insurance proceeds from one of the Prengers' insurers to satisfy a portion of the wrongful death judgments. The district court ruled that Plaintiffs were entitled to collect $1 million in insurance proceeds from the insurer. We reverse and hold that the insurance policy unambiguously precludes coverage of the wrongful death damages.

## I. Background

On September 28, 2009, Angela and Rodney Gilpin were shot and killed by David Hosier inside the Prengers' apartment building. The Prengers did not live at the apartment building; they operated it as a business endeavor by collecting rents from individual tenants like Angela. Angela was separated at the time from her

husband, Rodney, but he was with Angela in the building as her guest when Hosier killed them.

The Prengers had hired Hosier to perform occasional maintenance work at the building and provided him keys. Angela notified the Prengers about one month before her death that she was afraid of Hosier and that she was concerned for her safety because he had keys to her building. She wrote a letter to the Prengers one week before she was killed, again expressing concerns for her safety and notifying the Prengers that she was seeking a restraining order against Hosier.

Plaintiffs filed wrongful death actions against the Prengers in Missouri state court in March 2010, alleging that the Prengers' negligence in failing to provide security to Angela and Rodney contributed to their deaths. The state court entered judgments in favor of Plaintiffs on December 23, 2010. In separate rulings, the court concluded that the Prengers owed a duty to provide security to Angela because of the existence of a landlord-tenant relationship and that they owed a similar duty to Rodney because he was Angela's guest. The court determined that the Prengers negligently failed to conduct a background check of Hosier before giving him the keys to the building.[1] The court found that the Prengers were also negligent in failing to change the exterior locks to Angela's apartment building after learning that Hosier was a convicted felon and that Angela feared him. The court ruled that the Prengers' negligence was a contributing cause of the Gilpins' deaths and awarded Plaintiffs $4 million in damages.

On the same day the state court entered the judgments, Plaintiffs and the Prengers entered into an agreement under Mo. Rev. Stat. § 537.065, which allows injured parties and tortfeasors to contract to limit recovery to specific assets such as insurance proceeds. Specifically, Plaintiffs promised to limit satisfaction of the $4

---

[1]Hosier had a prior felony conviction for assault and had served time in an Indiana state prison.

million wrongful death damages to the proceeds of two insurance policies the Prengers held at the time of the killings.

The Prengers possessed a general commercial liability insurance policy from Farm Bureau Town & Country Insurance Company of Missouri ("Farm Bureau") with a $500,000 limit. Farm Bureau provided a defense to the Prengers in the wrongful death suits and later paid its coverage limit to Plaintiffs. The Prengers also held a personal property and liability insurance policy through Secura Supreme Insurance Company ("Secura"). The policy included "umbrella coverage" with a $1 million limit intended to cover liabilities above the limits of the Prengers' other insurance. In June 2010, Secura wrote a letter to Plaintiffs' attorneys that explained why Secura did not believe it was required to pay any amounts under the umbrella policy.

In February 2011, Plaintiffs filed an equitable garnishment action against Secura in state court. Secura removed the action to federal district court on the basis of diversity jurisdiction. See 28 U.S.C. § 1441; 28 U.S.C. § 1332(a)(1). The district court found that Plaintiffs were entitled to recover $1 million in insurance proceeds from Secura. In a separate order, the court denied Plaintiffs' request for postjudgment interest on the underlying wrongful death judgments. Secura appeals the district court's grant of summary judgment in favor of Plaintiffs. Plaintiffs cross appeal, arguing that the district court erred in denying postjudgment interest. Because we hold that the Secura umbrella coverage policy unambiguously precludes coverage in this case, we do not decide the postjudgment interest issue.

## II. Discussion

We review *de novo* a district court's interpretation of an insurance policy and its grant of summary judgment. See PETCO Animal Supp. Stores, Inc. v. Ins. Co. of N. Am., 724 F.3d 1025, 1026 (8th Cir. 2013). The parties agree that Missouri law applies in this case. When reviewing insurance policy terms, a Missouri court

-4-

"applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 132 (Mo. 2007) (en banc) (internal citation and quotation marks omitted). "Whether an insurance policy is ambiguous is a question of law." Martin v. U.S. Fid. & Guar. Co., 996 S.W.2d 506, 508 (Mo. 1999) (en banc). If an insurance policy is not ambiguous, it will be enforced according to its terms. See Rodriguez v. Gen. Accident Ins. Co., 808 S.W.2d 379, 382 (Mo. 1991) (en banc).

## A.

Plaintiffs maintain that the Prengers' umbrella coverage policy unambiguously allows recovery for the Prengers' tortious actions that contributed to the Gilpins' deaths. In the alternative, Plaintiffs argue that the policy exclusions are ambiguous and should be construed against Secura. Secura argues that its "Personal Umbrella Insurance" policy with the Prengers was intended to cover only personal, non-commercial liabilities and that the policy is subject to two applicable coverage exclusions—either of which bars Plaintiffs' recovery. The two exclusions in the Secura policy read as follows:

EXCLUSIONS

We do not cover:

. . .

7. *Business* pursuits of an *insured* unless covered by Personal Liability *primary insurance* described in the Declarations. Our coverage is no broader than the *primary insurance* except for our liability limit.

. . .

-5-

8. *Damages* resulting from the ownership, maintenance or use of *business property* of an *insured*. This exclusion does not apply to:

   a. an office, school or studio occupancy located on the *insured's residence premises* if covered by *primary insurance* described in the Declarations; or

   b. a one- to four- family dwelling rented or held for rental to any person if covered by *primary insurance* described in the Declarations.

The parties agree that the building at issue had more than four units, that the Prengers owned the apartment building as a "business property," and that the Prengers operated the apartment building as a "business pursuit." Accordingly, we must decide whether the business pursuits or business property exclusion contained in the Secura policy bars coverage of the damages Plaintiffs sustained in their wrongful death suits against the Prengers.

B.

We begin our analysis with the "business property" exclusion. The issue is whether the damages suffered by Plaintiffs in the underlying wrongful death suits are "[*d*]*amages* resulting from the ownership, maintenance or use of *business property* of an *insured*." (emphases in original).

Plaintiffs argue that the exclusion applies when damages are caused by dangerous or defective conditions of the business property, but that the exclusion does not bar coverage for the Prengers' personal tortious conduct in failing to conduct a background check on Hosier and in failing to retrieve the master keys from him or change the locks after learning of his felony conviction and of the potential danger he posed to Angela. Plaintiffs rely on <u>Lititz Mutual Insurace Co. v. Branch</u>, 561 S.W.2d 371 (Mo. Ct. App. 1977) and <u>MFA Mutual Insurance Co. v. Nye</u>, 612 S.W.2d 2 (Mo. Ct. App. 1980) for support.

Contrary to Plainitffs' assertions, <u>Lititz</u> and <u>Nye</u> fail to support the proposition that the business property exclusion does not apply in this case. First, the policy language at issue in both cases discussed coverage for injuries "arising out of any premises." <u>Nye</u>, 612 S.W.2d at 3; <u>Lititz</u>, 561 S.W. 2d at 372 n.1. Each case involved personal tortious conduct by an insured: for example, in <u>Lititz</u>, the insured's dog bit and injured a child while the dog was tethered to a leash on the insured's business property. 561 S.W. 2d at 372. In <u>Nye</u>, a person was injured when she was struck by a riding lawn mower driven by an insured. 612 S.W.2d at 3. Based on the language of the policies and the fact that each case involved personal tortious conduct, the respective courts interpreted the policy language to exclude coverage only for injuries arising out of the physical conditions of the property itself. <u>See</u> <u>Lititz</u>, 561 S.W.2d at 374 (finding that the policy excluded coverage for "conditions which cause injury on other uninsured land," but that the policy did not exclude "liability incurred by the insured personally because of his tortious personal conduct . . . which may occur at any place on or off the insured premises") (internal quotation marks omitted); <u>Nye</u>, 612 S.W.2d at 4 (concluding the policy contained "floating coverage for the insured wherever he might be, but coverage for defects in the land are excluded").

Unlike the policy language in <u>Lititz</u> and <u>Nye</u>, Secura's business property exclusion is broader: it precludes coverage for damages "resulting from the *ownership, maintenance or use* of *business property*." (emphasis added). If Secura's policy simply stated it excluded coverage for damages "resulting from the business property," Plaintiffs might have a stronger basis to claim that the business property exclusion does not apply in this case. But the language of Secura's policy by its terms contemplates damages resulting not just from the business property itself, but from various uses of that property as well. We hold that Plaintifs' damages did result from, at a minimum, the Prengers' ownership and maintenance of the apartment building, precluding coverage under the Secura policy.

First, Plaintiffs' damages resulted from the Prengers' ownership of the apartment building. In the wrongful death judgments, the state court found that the Prengers breached a legal duty to provide security to Angela and Rodney. The existence of this legal duty necessarily required the presence of a landlord-tenant relationship. See, e.g., Letsinger v. Drury Coll., 68 S.W.3d 408, 411 (Mo. 2002) (en banc) (per curiam) (noting that whether the owner of a fraternity house has a legal duty to provide security to a person injured at the house depends on "the existence (or non-existence) of a landlord/tenant relationship"). In other words, absent ownership of the building, the Prengers would have owed no duty to provide security to Angela and Rodney and thus would not have been liable for their deaths.

Second, Plaintiffs' damages resulted from the Prengers' maintenance of the business property. In this case, the state court found that the Prengers had hired Hosier to perform maintenance tasks at the apartment building (i.e., the business property). As part of Hosier's responsibilities, the Prengers provided him keys. Thus, damages in the underlying wrongful death judgments *resulted from* the Prengers' negligent maintenance of the business property itself—in failing to conduct a background check of Hosier (a maintenance worker), and in failing to retrieve the keys from Hosier or to change the locks after learning that Hosier posed a threat to Angela.

While Missouri case law dictates that we resolve ambiguous insurance provisions in favor of coverage and against the insurer, Poage v. State Farm Fire & Cas. Co., 203 S.W.3d 781, 784 (Mo. Ct. App. 2006), we will not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists," Todd v. Mo. United Sch. Ins. Council, 223 S.W.3d 156, 163 (Mo. 2007) (en banc). The Secura policy unambiguously precludes coverage for the wrongful death damages Plaintiffs sustained.

C.

Plaintiffs offer a separate textual argument for why the business property exclusion does not apply. Specifically, Plaintiffs claim the phrase "resulting from" in Secura's policy is restrictive—that is, the phrase requires something approaching proximate causation between Plaintiffs' damages and the business property. Plaintiffs contend that because the causal nexus between the business property and the damages in this case is too attenuated, Secura's use of the phrase "resulting from" renders the exclusion inapplicable. For support, Plaintiffs cite Missouri cases that have discussed the effects phrases such as "arising out of" and "resulting from" have when they are used in insurance contracts. See, eg., State Farm Mut. Auto. Ins. Co. v. Flanary, 879 S.W.2d 720, 723 (Mo. Ct. App. 1994) (citing Schmidt v. Util. Ins. Co., 182 S.W.3d 181, 183 (Mo. 1944)).

We disagree that the use of "resulting from" in the business property exclusion renders the exclusion inapplicable based on the facts in this case. This court has previously interpreted the phrase "resulting from" in the context of Missouri insurance cases. See Spirco Envtl., Inc. v. Am. Int'l Specialty Lines Ins. Co., 555 F.3d 637, 641–42 (8th Cir. 2009). In Spirco, we concluded that Missouri courts interpret the phrase "resulting from" to require a "causative link between a harm and a covered occurrence or event to be 'reasonably apparent' such that the harm could be considered a 'natural and reasonable incident or consequence'" of the covered event or occurrence. Id. at 642 (quoting Poage, 203 S.W.3d at 787). While Spirco interpreted the phrase in the context of a coverage dispute, the analysis of the provision remains the same for assessing whether the business property exclusion applies.

In this case, then, the correct inquiry is whether the wrongful death damages were a natural and probable consequence of the negligent ownership, maintenance or use of the apartment building. As discussed above in Part II.B., the answer to that

-9-

question is yes: the Prengers' *ownership* of the apartment building gave rise to their legal duty to provide adequate security to Angela. Moreover, the Prengers' breach of the landlord-tenant duty stemmed in part from their negligent *maintenance* of the property. In other words, the causal nexus between the damages incurred by Plaintiffs in their wrongful death actions and the Prengers' ownership and maintenance of the apartment building is "reasonably apparent" because the damages were a "natural and reasonable incident or consequence" of running an apartment leasing business. Spirco, 555 F.3d at 642. Importantly, the murders themselves did not have to be foreseeable. It was the existence of a landlord-tenant relationship, and the corresponding legal duty to provide security, that was foreseeable to the Prengers. Breaching this foreseeable duty created the damages in this case. Thus, even construing narrowly the effect of "resulting from" in the business property exclusion, we still conclude that the causation standard from Missouri case law that we articulated in Spirco is satisfied. See id.

D.

Finally, the business property exclusion is not ambiguous. Missouri courts are instructed to give an insurance policy's terms its plain meaning, even if the terms are located in a restrictive portion of a policy. See, eg., Harrison v. MFA Mut. Ins. Co., 607 S.W.2d 137, 142 (Mo. 1980) (en banc). In the present case, the district court found the business property exclusion was ambiguous because it did not "necessarily presuppose preclusion of personal liability for tortious conduct by the insureds which is only tangentially related to the business property." Eichholz, et al. v. Secura Supreme Ins. Co., Nos. 12-3170, 12-4032 at *13 (W.D. Mo. filed August 10, 2012). We disagree. As discussed above, the "tortious conduct" of the Prengers was more than "tangentially related to the business property," the conduct "result[ed] from" the Prengers' negligent ownership and maintenance of the apartment building.

Plaintiffs separately argue that the district court was correct in finding the business property exclusion ambiguous because it conflicts with the exception to the business pursuits exclusion. See id. at *14 (quoting Burns v. Smith, 303 S.W.3d 505, 512 (Mo. 2010) (en banc)) ("If a contract promises something at one point and takes it away at another, there is an ambiguity."). The district court reasoned that the business property exclusion conflicts with the exception to the business pursuits exclusion because "where negligent acts resulting from the pursuit of a business are covered under the exception, they would be precluded when they were related in any way to the Prengers' corresponding business property." Id. at *14.

We disagree. The exception to the business pursuits exclusion does not promise coverage; it says only that business pursuits "covered by Personal Liability *primary insurance* described in the Declarations" are *not otherwise precluded* by the business pursuits exclusion. Rather than promising coverage, the provision simply renders inapplicable one particular exclusion. Importantly, any coverage by the umbrella policy is still subject to any other applicable exclusion, such as the business property exclusion. Indeed, accepting the district court's rationale on this point would in effect mean that no exclusion in an insurance policy is ever enforceable in a given case unless every other exclusion applies. We do not believe "an ordinary person of average understanding" would construe the insurance policy in this manner. Seeck, 212 S.W.3d at 132.

## III.

For the reasons discussed above, we hold that the business property exclusion unambiguously precludes coverage of the wrongful death judgments Plaintiffs obtained against the Prengers. Accordingly, we reverse and remand to the district court for entry of judgment for the defendant, Secura Supreme Insurance Company.

_____