**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2940-22

ANTHONY BERARDI
and JANET BERARDI,

     Plaintiffs-Respondents,

v.

FMI INSURANCE COMPANY,

     Defendant-Appellant,

and

LOYAS AGENCY,

     Defendant-Respondent.

_____

Submitted November 1, 2023 – Decided November 28, 2023

Before Judges Susswein and Vanek.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0205-22.

Macnow & Papaleo, attorneys for appellant (Robert C. Blum, of counsel; Russell Macnow, on the brief).

The Killian Firm, PC, attorneys for respondents (Dimitri Teresh, on the brief).

PER CURIAM

This insurance coverage dispute arises from an incident in which plaintiffs Anthony and Janet Berardi's dog bit a residence employee at their second home. Defendant Franklin Mutual Insurance Company (FMI) provides insurance for plaintiffs' primary residence, but not their secondary house, which was insured by another company. By leave granted, FMI appeals from a May 1, 2023 Law Division order granting plaintiffs' cross-motion for summary judgment. The motion court ordered FMI to defend plaintiffs in the underlying dog bite lawsuit and to reimburse them for defense costs that are not covered by any other insurance policy. After carefully reviewing the terms of the insurance contract in light of the governing legal principles, relevant facts, and arguments of the parties, we affirm.

I.

We discern the following pertinent facts and procedural history from the record. Plaintiffs' primary residence is located in Sparta. They also own a house in Montauk, New York. Their Tibetan Mountain dog was normally housed at the Sparta home, but sometimes traveled with them to the Montauk house. Plaintiffs retained a cleaning service for the Montauk property. Plaintiffs would

2

keep the dog locked away when the cleaning service employee came. On July 2, 2021, a new cleaning service employee, Nirsa Lopez Rodriguez,[1] arrived at the Montauk house two hours earlier than expected. The dog was not secured and attacked Lopez Rodriguez, allegedly causing injury.

FMI issued a homeowners insurance policy for the property located in Sparta. The FMI policy provides coverage for the Sparta dwelling, related structures, personal property, and loss of use. The FMI policy provides coverage for liability to others, limited to $1,000,000, and medical payments to others, limited to $10,000. The policy also includes a $5,000,000 "Personal Excess Liability Umbrella Coverage" endorsement.

Scottsdale Insurance Company (Scottsdale) issued a policy for the property in Montauk. The Scottsdale policy provides coverage for that dwelling, personal property, and loss of use. The Scottsdale policy has a $1,000,000 personal liability limit and a medical payments to others limit of $5,000. It also contains a "Limited Animal Liability Coverage Form" that limits Scottsdale's liability for dog bites to $10,000.

---

[1] We designate the employee as Nirsa Lopez Rodriguez consistent with that litigant's own filing in the underlying action.

By letter dated July 27, 2021, FMI denied coverage for the dog bite incident under the main liability coverages. By letter dated December 27, 2021, FMI denied coverage under the excess (umbrella) coverage.

In October 2021, Lopez Rodriguez filed a lawsuit in the Supreme Court of New York (the underlying action), seeking damages for pain and suffering, lost wages, and medical expenses. On December 1, 2021, Scottsdale agreed to defend plaintiffs in the underlying action subject to a reservation of rights.

In May 2022, plaintiffs filed a declaratory judgment complaint against FMI in New Jersey Superior Court. That is the matter presently before us in this interlocutory appeal. Plaintiffs alleged FMI breached its insurance contract by refusing to defend and indemnify them in the underlying action. On October 26, 2022, Scottsdale filed a declaratory judgment against plaintiffs in the Supreme Court of New York in which it sought a declaration of its limited coverage obligation under its policy.

On January 24, 2023, FMI filed a motion for summary judgment in which it sought to have plaintiffs' declaratory judgment complaint dismissed. On February 21, 2023, plaintiffs filed a cross-motion for summary judgment. On May 1, 2023, Judge Louis S. Sceusi denied FMI's motion for summary judgment

4

and granted plaintiffs' cross-motion. The judge issued a twenty-one-page written opinion.

We granted FMI's motion for leave to appeal Judge Sceusi's order. Defendant raises the following contentions for our consideration: (1) the motion judge erred in finding coverage under the personal liability to others coverage of the FMI policy; (2) the motion judge erroneously relied on the medical payments to others coverage in the FMI policy; and (3) the FMI umbrella endorsement only provides coverage for claims that exceed $1,000,000.

II.

We begin our analysis by acknowledging the legal principles governing this appeal. As with other contracts, the terms of an insurance policy define the rights and responsibilities of the parties to it. N.J. Citizens United Reciprocal Exch. v. Am. Int'l Ins. Co. of N.J., 389 N.J. Super. 474, 478 (App. Div. 2006). "The interpretation of an insurance contract is a question of law for the court to determine, and can be resolved on summary judgment." Adron, Inc. v. Home Ins. Co., 292 N.J. Super. 463, 473 (App. Div. 1996). The court's standard of review regarding conclusions of law is de novo. Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 385 (2010).

A-2940-22

When engaging in an interpretation of an insurance policy, the policy should be construed in accordance with its "plain and ordinary meaning." Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 272-73 (2001). "If the policy terms are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased." President v. Jenkins, 180 N.J. 550, 562 (2004).

However, because insurance policies are contracts of adhesion, if any ambiguity exists, the ambiguity must be construed so as to effect the "reasonable expectations of the insured." Villa v. Short, 195 N.J. 15, 23 (2008) (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)). "That is, if the policy language 'fairly supports two meanings, one that favors the insurer, and the other that favors the insured, the policy should be construed to sustain coverage.'" Ibid. (quoting President, 180 N.J. at 563).

### III.

Applying those foundational principles, we first address FMI's contention the motion judge erred in finding its policy covers the dog bite incident at the Montauk property. The section of the policy titled "Coverage E" provides in pertinent part,

> [w]e will pay for the benefit of insureds, up to our limits
> of liability shown in the Declarations, those sums that

6

insureds become legally obligated to pay as damages because of bodily injury or property damage that occurs during the policy term <u>and is caused by an occurrence</u> covered by this policy.

[(Emphasis added).]

The glossary section of the policy defines the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results during the policy term in bodily injury or property damage." For purposes of this appeal, there clearly was an occurrence—the dog bite—that resulted in injury to the residence employee in the ensuing underlying lawsuit.[2] But as FMI aptly notes, that does not end the inquiry given the accident occurred at plaintiffs' Montauk property, not at the Sparta residence for which the FMI policy was issued. We thus look to the "Locations Not Insured Exclusion" portion of the FMI policy. That section reads:

### 6. LOCATIONS NOT INSURED EXCLUSION

We do not cover bodily injury or property damage arising out of any premises owned, rented, or controlled by you, other than an insured premises covered by this policy. <u>But, we do cover bodily injury to a residence</u>

---

[2] We recognize that the circumstances of the dog bite and whether and to what extent injuries were suffered are contested in the underlying lawsuit.

> employee while performing such duties at other premises.
>
> [(Emphasis added).]

While this section is described as an "exclusion" of locations that are not insured, it makes clear the policy coverage extends to injuries sustained by a residence employee[3]—such as Lopez Rodriguez—while performing such duties at another premises, that is, a premises besides the Sparta property.

In interpreting this section, moreover, we are mindful that when interpreting policy exclusions, we must construe them narrowly. Villa, 195 N.J. at 23-24. Applying that principle, we reject the argument that the second sentence is essentially preempted by the first sentence, which states the policy does not cover bodily injury that "aris[e] out of any premises owned, rented, or controlled by [plaintiffs], other than an insured premises covered by this policy." We are unpersuaded the dog bite "arose out of" the Montauk property within the meaning of the FMI policy.

---

[3] The FMI policy defines the term Residence Employee to mean "an employee of an insured . . . [t]hat performs duties that relate to care and use of the insured premises, including domestic or household duties." We note that while this glossary definition refers to care and use "of the insured premises," section II D—liability not insured makes clear, "[b]ut, we do cover bodily injury to a residence employee while performing such duties at other premises." (Emphasis added).

A-2940-22

We find instruction as to the meaning of the phrase "arising out of" in Flomerfelt v. Cardiello, 202 N.J. 432, 454 (2010). There, our Supreme Court rejected the insurer's interpretation of the "arising out of" language to mean "incident to" or "in connection with." Id. at 456. The Court held,

> [t]hat reading would expand the phrase 'arising out of' to mean that the injury is connected in any fashion, however remote or tangential, to the excluded act, rather than one that 'originates in,' 'grows out of' or has a 'substantial nexus' to the excluded act. It is a suggested reading so at odds with our case law that we decline to embrace it.
>
> [Ibid.]

We also find persuasive guidance in Lititz Mut. Ins. Co. v. Branch, 561 S.W.2d 371, 372 (Mo. Ct. App. 1977). In Lititz, a dog bit a child when the child visited the dog owner's business. Ibid. The business owner's insurance company argued that coverage was precluded under a provision of the policy stating coverage did not apply "to bodily injury or property damage arising out of any premises, other than an insured premises, owned, rented or controlled by any insured; but this exclusion does not apply to bodily injury to any residence employee arising out of and in the course of his employment by any Insured." Id. at 372 n. 1. In rejecting the insurance company's argument the Missouri appellate court explained:

[i]t cannot therefore be said that a dog bite arises out of-- originates from, grows out of, or flows from-- the premises. That it occurs upon the premises does not establish a causal connection between the bite and the premises. We find that the language used does not contemplate that the exclusion applies to liability arising from a dog bite occurring on the Kable business property.

[Id. at 373.]

We find further support for our conclusion the dog bite is covered under the FMI policy in the section concerning "medical payments to others" coverage (Coverage F). [4] Defendant contends it was inappropriate for the motion court to

---

[4] That section of the FMI policy reads in pertinent part:

**2. COVERAGE F - MEDICAL PAYMENTS TO OTHERS**
A. We will pay reasonable necessary medical expenses incurred within three years from the date of a covered accident by persons who require medical services because of bodily injury covered under this policy. Medical expenses means expenses for: necessary ambulance, dental, funeral, hospital, medical, professional nursing, surgical or x-ray services; prosthetic devices; drugs and medical supplies. The accident must be sustained as follows:
…
2. Away from an insured premises, but only if such accident:
…

10

A-2940-22

rely on the Coverage F portion of the FMI policy. We disagree. That section expressly provides for payment of medical expenses provided the accident either occurred on an insured premises (which does not apply here because the accident did not occur at the Sparta property) or away from an insured premises, if the accident is caused by animals owned by or in the care of an insured. That is exactly what happened here.

It is unreasonable to interpret an ambiguous portion of the policy to exclude coverage for an accident when another provision expressly and unequivocally provides for payment of medical expenses arising from that accident. See Hardy ex. rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009) ("A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner."). Stated another way, the explicit terms of Coverage F are relevant in determining whether the policy covers the Montauk dog bite incident.

---

b. Is caused by an insured, or by a person while performing duties as a residence employee of an insured.
c. Is caused by animals owned by, or in the care of, an insured.

11

A-2940-22

IV.

We turn, finally, to defendant's contentions regarding the $5,000,000 umbrella coverage set forth in an endorsement. That provision of the policy, MPL 80, provides, "[i]f the occurrence is covered by a primary policy, the limit of liability under the MPL 80 applies to any damages which exceed the limits of the primary policies described in this coverage form together with any other collectible insurance available to the insured." (Italicization omitted).

Neither party disputes that umbrella excess coverage arises only when primary liability coverage has been exceeded. The dispute centers on the meaning of the term "limits." FMI interprets MPL 80 to mean it is only responsible for umbrella coverage in excess of the overarching maximum limit of primary liability coverage, which is $1,000,000. Plaintiffs argue FMI is responsible for providing umbrella coverage when covered damages exceed any of the sublimits specified in the policy, such as the $10,000 limit for medical payments made to others.

The plain text of the umbrella endorsement does not refer explicitly to sublimits. We note from a grammatical perspective, moreover, that the plural "limits" could refer either to the overarching maximum limits of two or more separate policies, or to various limits set forth within either or both the FMI and

Scottsdale policies.[5]  The plain text, in other words, is ambiguous and could support either party's interpretation.

Neither party cites published precedent specifically addressing whether a general reference to policy limits in an umbrella excess coverage endorsement includes or excludes sublimits.  Accordingly, we resort to the well-established principle that "[w]here the language of a policy will support two meanings, one favorable to the insured and the other favorable to the insurer, the interpretation sustaining coverage must be applied."  Franklin Mut. Ins. Co., 275 N.J. Super. at 340.  We add that if FMI wanted the umbrella excess coverage to apply solely to damages above the maximum amount of liability provided by the primary policies, and not to any or all the sublimits specified in the policies, it could have drafted the umbrella excess coverage endorsement to make that clear.

To the extent we have not specifically addressed them, any remaining contentions raised by FMI lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5]  We note the FMI policy specifies several sublimits, including the $10,000 limit on medical payments, a $10,000 limit for sump pump failure, fungi, or service line interruption, and a $500,000 limit for workers compensation.  The Scottsdale policy also sets liability sublimits, including a medical payment to others limit of $5,000, and a limit of liability for animals of $10,000.

13