NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BELL & 63RD INVESTMENTS LLC, et al., *Plaintiffs/Appellants/Cross-Appellees*,

*v.*

AUTO-OWNERS INSURANCE COMPANY, *Defendant/Appellee/Cross-Appellant*.

No. 1 CA-CV 17-0180
FILED 8-21-2018

Appeal from the Superior Court in Maricopa County
No. CV2013-053377
The Honorable John R. Hannah, Jr., Judge

**AFFIRMED**

COUNSEL

Keller Rohrback LLP, Phoenix
By Gary A. Gotto, Alison E. Chase, Ron Kilgard
*Counsel for Plaintiffs/Appellants/Cross-Appellees*

Graif, Barrett & Matura, PC, Scottsdale
By Jay R. Graif, Kevin C. Barrett, Melissa J. England
*Counsel for Defendant/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

---

**H O W E**, Judge:

¶1        Bell & 63rd Investments LLC ("Bell") and George Bien-Willner (collectively "Appellants") challenge the entry of summary judgment on their breach of contract and insurance bad faith claims against Auto-Owners Insurance Company ("Auto-Owners") and the sanctions award under Arizona Rule of Civil Procedure ("Rule") 68. Both sides also challenge the trial court's attorneys' fees award to Auto-Owners. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        Auto-Owners issued a commercial property and general liability coverage policy (the "Policy") for a rental property Bell owned (the "Property"). Bien-Willner, Bell's managing member, was the only named insured on the Policy. Appellants made two claims on the Policy, one in April 2011 and the other in May 2012.

¶3        The April 2011 claim involved a request for loss of rents and the theft of a stove, microwave oven, and refrigerator as well as interior damage to the Property. Two days after receiving the claim, Auto-Owners inspected the Property and obtained a third-party estimate shortly after. Although Auto-Owners denied that the Policy covered the stove and microwave oven, it agreed to pay for those items after Bien-Willner explained they were built into the cabinets. Auto-Owners declined to cover the refrigerator, however, because Bien-Willner had not purchased personal property coverage. Auto-Owners also denied Appellants' loss of rents claim because it determined that the Property was not "unfit to live in."

¶4        Auto-Owners offered to advance $727, the estimated cost for the stove and microwave oven minus a $1,000 deductible. Bien-Willner refused the advance as inadequate. Auto-Owners authorized a $17,018.55 payment in May 2011. Bien-Willner picked up the check but did not sign the provided proof of loss form.

¶5        Auto-Owners then retained attorney Kevin Barrett to represent its interests. Bien-Willner refused to communicate with Barrett and instead wrote to multiple Auto-Owners executives and board members in October 2011, contending that Auto-Owners wrongfully refused to pay his refrigerator and loss of rents claims and wrongfully applied depreciation to the payment he had accepted. Bien-Willner also contended that Auto-Owners never reissued the $727 advance he had refused. Auto-Owners subsequently sent Bien-Willner a second payment of $1,727 and reaffirmed its denials of coverage for loss of rents and the refrigerator.

¶6        The May 2012 claim involved the theft of an air conditioning condenser unit. Auto-Owners and Barrett went to inspect the Property that month. Bien-Willner refused to allow Barrett to enter the Property, however, and submitted a $9,000 replacement estimate for the unit. Auto-Owners retained a third party to review the estimate and inspect the Property alongside Barrett. That inspection did not occur because Bien-Willner continued to object to Barrett's presence on the Property. Auto-Owners denied coverage for the May 2012 claim, citing Bien-Willner's refusal to allow an inspection. It also contended that the Property had been vacant for more than 30 days before the loss occurred.

¶7        Bell sued Auto-Owners in October 2013, alleging breach of contract and bad faith. Bell later amended its complaint to add Bien-Willner as a plaintiff. The trial court proceedings were long and contentious; for example, the parties filed and litigated six motions to compel during discovery. In separate motions, Auto-Owners moved for summary judgment against Bell and Bien-Willner. Approximately one month before trial, Appellants cross-moved for summary judgment, sought sanctions against Auto-Owners for its alleged failure to produce employee training documents, and moved to preclude Barrett from serving as Auto-Owners' trial counsel.

¶8        The trial court granted summary judgment to Auto-Owners and specifically rejected Appellants' loss of rents, refrigerator, and air conditioning unit claims. Appellants moved to reconsider, contending that the ruling did not foreclose their arguments that Auto-Owners acted in bad faith by (1) concealing an earlier draft of the estimate on the first claim, (2) holding back salvage and depreciation on the first claim, (3) forcing them to communicate with Barrett, and (4) failing to properly communicate with them. Auto-Owners contended that Appellants had already raised these issues and the court denied the motion without explanation.

¶9          Auto-Owners then sought to recover $504,132 in attorneys' fees. It also requested expert fees and double taxable costs based on two offers of judgment it made in early 2015. *See* Ariz. R. Civ. P. 68(g). The court awarded Auto-Owners $80,000 in attorneys' fees but criticized its litigation tactics. The court observed that Auto-Owners had "conducted the litigation . . . to teach Mr. Bien-Willner a lesson, and to deter others like him[,]" and that its "'take no prisoners' approach" was "the primary cause for the excessive litigation in this case." The court also awarded $61,074.22 in expert witness fees and $15,377.79 in taxable costs against Bien-Willner under Rule 68.

¶10          Appellants timely appealed the judgment, Rule 68 sanctions, and attorneys' fees award. Auto-Owners timely cross-appealed, challenging the attorneys' fees award amount.

## DISCUSSION

¶11          In reviewing the court's rulings on the parties' cross-motions for summary judgment, we review questions of law de novo but review the facts in a light most favorable to the parties against whom summary judgment was granted. *Nelson v. Phx. Resort Corp.*, 181 Ariz. 188, 191 (App. 1994). "Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *McCleary v. Tripodi*, 243 Ariz. 197, 201 ¶ 21 (App. 2017). Summary judgment would be inappropriate if the facts, even if undisputed, would allow reasonable minds to differ. *Nelson*, 181 Ariz. at 191.

### 1. Denial of Claims

¶12          Appellants argue that the trial court erred in granting summary judgment on the denial of their claims. They contend that they were entitled to loss of rents under Coverage D of the Policy. We construe this provision and all other Policy provisions according to their plain and ordinary meaning. *See Cal. Cas. Ins. Co. v. Am. Family Mut. Ins. Co.*, 208 Ariz. 416, 418 ¶ 5 (App. 2004). If a provision is susceptible to different constructions, we discern its meaning by examining its purpose, the public policy considerations involved, and the transaction as a whole. *Id.*

¶13          Coverage D limits Auto-Owners' liability to losses "resulting from" a covered loss "for the shortest time needed to make the rented part fit to live in." The parties do not dispute that no tenant was living at the Property when the loss occurred. As such, the Property had no "rented part," and Appellants suffered no actual loss of rents. *See Auto-Owners Ins. Co. v. Neisler*, 779 S.E.2d 55, 61 (Ga. Ct. App. 2015) (interpreting identical

policy language to "unambiguously require[] that the property actually have a tenant at the time of loss" and citing authorities).

¶14        Appellants argue that *Neisler* is distinguishable because "the more natural interpretation of 'rented part' would be to address a situation where a part of the property is occupied by the insured and a part is rented out to others." They do not explain, however, how a part of the Property could be "rented out to others" without a current renter or lease. Appellants also contend that the trial court improperly granted summary judgment on this issue because Auto-Owners raised it for the first time in its reply brief. Under Rule 7.1(a)(3), reply memoranda "may address only those matters raised in the responsive memorandum." But the brief in question also served as Auto-Owners' response to Bien-Willner's cross-motion for summary judgment. Bien-Willner could have replied in support of his motion but did not do so. In any event, the timing of Auto-Owners' argument does not preclude this Court from interpreting the Policy's language. *See Liristis v. Am. Family Mut. Ins. Co.*, 204 Ariz. 140, 143 ¶ 13 (App. 2002) (appellate court interprets insurance policy "independent of the trial court's conclusions").

¶15        Appellants next contend that Auto-Owners should have covered the loss of the refrigerator because it was a fixture to the Property. But the Policy coverage Bien-Willner purchased—Coverage A—does not refer to fixtures; it instead covers "the dwelling located at the described premises, including *structures* attached to that dwelling." Appellants do not contend that the refrigerator was a "structure."

¶16        Meanwhile, Coverage C—which Bien-Willner did not purchase—provides coverage for "personal property owned or used by any insured when the property is at the described premises[,]" including "appliances and household furnishings in that part of the described premises regularly rented or held out for rental to others by an insured." Appellants concede that the refrigerator could be both personal property and a fixture. As such, even assuming the refrigerator was a fixture, it fell within Coverage C and not the coverage Bien-Willner purchased.

¶17        Appellants also cite Auto-Owners' decision to cover the stove and microwave oven as evidence that "appliances" could be covered under both Coverage A and Coverage C. Auto-Owners clearly stated, however, that it did not concede that these items fell within Coverage A. Thus, Appellant's argument is without merit.

## 2. Breach of Contract and Bad Faith

¶18      Appellants next argue that the trial court improperly granted summary judgment on several aspects of their breach of contract and bad faith claims; Auto-Owners' (1) concealment of earlier estimates of the April 2011 claim, (2) failure to pay over $3,700 in salvage and depreciation, and (3) forcing them to deal with Barrett in the adjustment process and repeatedly "asserting, through counsel, that all amounts due . . . had been paid[.]" To establish bad faith, Appellants had to show Auto-Owners acted unreasonably and either knew its conduct was unreasonable or acted with such reckless disregard that knowledge of unreasonableness may be imputed to it. *Sobieski v. Am. Standard Ins. Co. of Wis.*, 240 Ariz. 531, 534 ¶ 11 (App. 2016). Appellants cite their motion for reconsideration as support for these allegations and also mentioned each of these issues in their earlier motions as well. As explained below, however, they did not demonstrate genuine issues of material fact as to any of these issues.

### 2a. Concealment of Estimate

¶19      Appellants' contend that Auto-Owners concealed earlier versions of the estimate of the April 2011 loss. The record does not reveal any concealment because Auto-Owners told Bien-Willner that it was revising the initial estimate to exclude non-covered items. Auto-Owners also presented undisputed expert testimony that it was not obligated to share all estimate versions with Bien-Willner. As such, Appellants' argument fails.

### 2b. Salvage and Depreciation

¶20      Appellants next argue that Auto-Owners inappropriately held back $3,792.96 in salvage and depreciation amounts on the May 2011 payment. Appellants contend that they specifically requested payment for salvage and depreciation and invited "Auto-Owners to inspect the Property to finish the adjustment with respect to these items" and that Auto-Owners ignored the request. But the Policy obligated Auto-Owners to pay only "actual cash value" for damaged property, which was defined as "the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss." Appellants have not challenged the actual depreciation calculation and Bien-Willner testified that he had disposed of the salvaged flooring material, thereby foreclosing Auto-Owners' ability to collect and pay out for the salvaged items.

¶21　　　　Appellants cite to their motion for reconsideration as evidence that they invited Auto-Owners to inspect the Property to finish the adjustment regarding the items at issue and that Auto-Owners ignored the invitation. But no such invitation existed. The motion merely cited an email from Bien-Willner to his agent in which he complained that Auto-Owners had "stopped adjusting the claim [and] . . . attempted to force [him] to deal with an outside lawyer" and that he had been "shorted several . . . thousand dollars." It said nothing about inviting Auto-Owners to inspect the Property. Appellants' argument that Auto-Owners ignored their request to pay salvage or deprecation amounts or to inspect the Property to finish the adjustment is thus without merit.

### 2c. Outside Counsel Involvement

¶22　　　　Appellants also contend that Auto-Owners either breached the contract or acted in bad faith by retaining Barrett before litigation commenced. Appellants cite no authority to support this contention. They also fail to show any specific breaches or bad faith acts that Barrett took; instead, they broadly contend that he "repeatedly . . . assert[ed] . . . that all amounts due to the insured had been paid[.]" But communicating Auto-Owners' coverage positions, even if they were erroneous, is not a breach of contract or bad faith.[1]

### 3. Punitive Damages

¶23　　　　Appellants argue that summary judgment was improper on their punitive damages claim, citing the "concealment" issue discussed above and the delay in paying the $727 for the stove and microwave.[2] An award of punitive damages in an insurance bad faith case requires something more than the conduct necessary to show bad faith. *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 230 Ariz. 592, 604 ¶ 60 (App. 2012). As

---

[1]　　　　Auto-Owners contends that Appellants' claims were time-barred under the Policy's one-year limitations period. We need not reach that issue.

[2]　　　　Appellants also contend that "Auto-Owners failed to comply with the Arizona law regarding the fair handling of claims," repeating many of the same issues raised within their bad faith claim. They do not, however, demonstrate how Auto-Owners' alleged acts violated any laws governing fair claims handling practices.

discussed above, Appellants did not establish any genuine issues of material fact on their bad faith claim and therefore cannot recover punitive damages.

## 4. Attorneys' Fees

**¶24**        Appellants contend that the trial court erred by awarding Auto-Owners attorneys' fees because it did not comply with then-Rule 54(g)(3). Under the Rule as written at the time, fee applications "may be supported by affidavit, and exhibits or, at the discretion of the court, by testimony."[3] Ariz. R. Civ. P. 54(g)(3) (2016). Appellants argue that the declaration of counsel submitted with Auto-Owners' application was incompetent because it did not include a statement that it was submitted under penalty of perjury.

**¶25**        Auto-Owners submitted an amended declaration after Appellants raised this issue adding the sentence "[i]f called as a witness, I could and would testify competently thereto" to the first paragraph and Rule 80(c) language to the last page. Appellants contend that these changes meant that Auto-Owners offered "new argument and evidence on reply." But Appellants fully addressed the merits of Auto-Owners' application before receiving the amended declaration. The court thus did not err in considering it. *See, e.g., Rodriquez v. Williams*, 104 Ariz. 280, 283 (1969) ("[W]e prefer to determine cases on their merits rather than on points of procedure.").

## 5. Rule 68 Sanctions

**¶26**        Appellants also challenge the $61,074.22 expert witness fee award under Rule 68(g), which authorizes a sanction of "reasonable expert witness fees" incurred after the date of a rejected offer of judgment. We review the imposition of such sanctions for an abuse of discretion. *Berry v. 352 E. Va., L.L.C.*, 228 Ariz. 9, 15 ¶ 31 (App. 2011). Appellants contend that the sanction was unreasonable because it more than doubled the $29,500 offer of judgment that they served on Auto-Owners. They do not explain why their offer of judgment, representing the amount they were willing to accept to resolve their claims at that time, constitutes a benchmark for expert witness fees Auto-Owners would later incur. *Cf. Lohmeier v. Hammer*, 214 Ariz. 57, 63 ¶ 20 (App. 2006) (concluding the trial court did not err in refusing to use the fees charged by an opposing expert witness as a

---

[3]        The Rule has since been amended to require that fee applications be "supported by affidavit" and comply with Rule 7.1. Ariz. R. Civ. P. 54(g)(4).

benchmark for assessing reasonable expert witness fees for purposes of Rule 68(g)). They also have not identified any specific expert services they believe were excessive or unreasonable. Thus, the trial court did not abuse its discretion in awarding the expert witness fee.

### 6. Auto-Owners' Cross-Appeal

**¶27**  In its cross-appeal, Auto-Owners challenges the court's decision to award only $80,000 of its $504,132 attorneys' fees request. The amount of a fee award under A.R.S. § 12–341.01(A) is reviewed for an abuse of discretion. *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 13 ¶ 12 (App. 2000). We review the record in the light most favorable to upholding the award. *In re Indenture of Tr. Dated Jan. 13, 1964*, 235 Ariz. 40, 51 ¶ 41 (App. 2014).

**¶28**  Auto-Owners contends that the trial court improperly considered Appellants' offer of judgment and the amount Appellants' counsel allegedly incurred in prosecuting the case when it determined a reasonable fee award. The record does not support that assertion.

**¶29**  The court evaluated Auto-Owners' fees claim using three methods: (1) "what Auto-Owners actually had to do to prevail in their defense"; (2) what fees Auto-Owners incurred before Appellants made their $29,500 offer of judgment; and (3) the billing rates and hours claimed, as required by *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183 (App. 1983). It reached essentially the same conclusion under all three methods, not all of which considered the offer of judgment or Appellants' alleged fees. The court also gave significant weight to "the detailed assessment by [Appellants'] counsel of the time entries, which identified many instances of excessive billing, duplicative and inefficient staffing, billing for litigation of discovery and scheduling issues that should have been resolved by the parties, and inconsistent or unclear task descriptions." It had ample discretion to do so. *See Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350 ¶ 17 (App. 2006) ("To find an abuse of discretion, there must either be no evidence to support the superior court's conclusion or the reasons given by the court must be clearly untenable, legally incorrect, or amount to a denial of justice."). We therefore affirm the fees award. *See Rudinsky v. Harris*, 231 Ariz. 95, 101 ¶ 27 (App. 2012) ("We will not disturb the trial court's discretionary award of fees if there is any reasonable basis for it.").

### 7. Attorneys' Fees on Appeal

**¶30**  Both sides request their attorneys' fees incurred on appeal under A.R.S. § 12–341.01(A), which permits a discretionary award to the

successful party in an action arising out of a contract. In our discretion, we decline to award fees to either side. Auto-Owners is the successful party on balance and may recover its taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶31       For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA