IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CHUNG TRINH, *Petitioner,*

*v.*

THE HONORABLE JEANNE GARCIA, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge,*

THE STATE OF ARIZONA, *Real Party in Interest*

No. 1 CA-SA 20-0244
FILED 4-6-2021

Petition for Special Action from the Superior court in Maricopa County
No.  CR2019-006110-001
The Honorable Jeanne Garcia, Judge (retired)

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Mitchell Stein Carey Chapman, PC, Phoenix
By Flynn P. Carey (argued) and Andrew R. Breavington
*Counsel for Petitioner*

Arizona Attorney General's Office, Phoenix
By Brett Harames
*Counsel for Real Party in Interest*

---

## OPINION

Judge Paul J. McMurdie delivered the Court's opinion, in which Presiding Judge James B. Morse, Jr. and Judge Maria Elena Cruz joined.

---

**M c M U R D I E**, Judge:

¶1        Chung Trinh petitions for special-action review of the superior court's order denying his motion to remand to the grand jury for a new finding of probable cause. We accept jurisdiction but deny relief, holding that under A.R.S. § 21-412, when a defendant sends the State a letter setting forth his version of events and outlining potentially exculpatory evidence, the State must notify the grand jury of the letter so it may decide whether to ask to see it. However, in this case, the State's failure to do so was harmless error.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Trinh is a co-owner of Lighthouse Psychiatry, which provides transcranial magnetic stimulation ("TMS") treatment to patients with clinical depression. TMS treatment requires a prescription from a licensed physician, who determines the part of the brain to target and how much power to use during treatment. The other co-owner of Lighthouse Psychiatry is Dr. Yakari Kawamoto, a licensed physician. Though not a licensed physician, Trinh has a medical degree and works as a technician performing TMS treatments under a licensed physician's prescription. In that capacity, he meets with patients regularly to explain TMS and discuss their treatment.

¶3        Sometime before 2018, the Attorney General's Office began investigating an anonymous tip that Trinh was practicing medicine without a license. Investigators became concerned that Trinh represented himself to the community and patients as a psychiatrist to garner their trust to convince them to begin TMS treatment.

¶4        Before the grand jury, the State presented evidence that several Lighthouse Psychiatry's patients believed Trinh was a doctor. Multiple online materials described Trinh as "Dr. Chung Trinh, M.D." or "Chung Trinh, M.D." Trinh also included the "M.D." designation on materials for a loan application. Further, the State's investigator testified

that Trinh was making medical determinations and performing procedures without Dr. Kawamoto's involvement. The witness related that Dr. Kawamoto rubber-stamped the medical records of patients who dealt with Trinh. One patient claimed Trinh altered her TMS prescription without Dr. Kawamoto's consent, and the therapy as modified caused her to fall to the floor with intense pain.

¶5　　　　　Trinh did not ask to testify before the grand jury but sent the State a six-page letter outlining his defense to the allegations. Trinh's letter explained TMS and described his education, experience, and employment history, as well as Lighthouse Psychiatry's billing structure. Trinh provided the billing structure to show that Lighthouse Psychiatry had derived no money from any misrepresentations regarding his licensure. The letter also claimed that Lighthouse Psychiatry recorded Dr. Kawamoto as the prescribing physician. Additionally, the letter provided Trinh's explanation regarding the claims that he represented himself as a physician. Lastly, Trinh asked the State to clarify to the grand jury that unlawfully using "M.D." is legally distinct from the unlawful practice of medicine.

¶6　　　　　Trinh emailed the letter to the State before the grand jury proceedings and, in a follow-up email, asked the State to provide it to the grand jury in its entirety. On the morning of the grand jury session, the State confirmed it had received the letter. However, the State did not inform the grand jury that Trinh had sent the letter, nor did the State present the grand jury with an outline of the letter's contents or Trinh's defense. Eleven out of the twelve grand jurors voted to indict Trinh on one count of fraudulent schemes and artifices, four counts of money laundering, two counts of forgery, one count of practicing behavior analysis without a license, two counts of practicing medicine without a license, and one count of criminal impersonation.

¶7　　　　　After the indictment's return, Trinh moved to remand the case to the grand jury. He argued the State violated A.R.S. § 21-412 when it failed to inform the grand jury of the letter offering his defense and identifying potentially exculpatory evidence.

¶8　　　　　The superior court denied the motion, concluding that because Trinh did not request to testify before the grand jury, "the State was required to present only clearly exculpatory evidence, not all of the exculpatory evidence or the level of detail the Defendant asserts." The court reasoned that when a defendant requests to appear at a grand jury hearing and provides a description of his proposed testimony, the State is obligated to convey that information to the grand jury fairly and impartially. Because

3

Trinh did not request to appear, the court concluded the State was only required to present clearly exculpatory evidence.

**¶9**         Trinh petitions this court for special-action review and requests we vacate the superior court's order and remand the matter to the grand jury for a new probable cause determination.

## JURISDICTION

**¶10**         "Special action jurisdiction is proper when a party has no 'equally plain, speedy, and adequate remedy by appeal[.]'" *Phillips v. Garcia*, 237 Ariz. 407, 410, ¶ 6 (App. 2016) (quoting Ariz. R.P. Spec. Act. 1(a)). A party generally may not challenge a grand jury's probable cause determination on direct appeal. *State v. Moody*, 208 Ariz. 420, 439–40, ¶ 31 (2004). Arizona caselaw is clear that, with one exception, "all challenges to a grand jury's findings of probable cause must be made by motion followed by special action before trial; they are not reviewable on appeal." *Id.* "Absent an indictment that the State knew was partially based on perjured, material testimony, [a] defendant may not challenge matters relevant only to the grand jury proceedings by appeal from conviction." *State v. Murray*, 184 Ariz. 9, 32 (1995).

**¶11**         Trinh does not argue the grand jury indictment was based on perjured testimony, so he could not raise the denial of his remand motion on appeal, if convicted. Therefore, special-action jurisdiction is appropriate because Trinh has no equally plain, speedy, or adequate remedy by direct appeal. Accordingly, we accept special-action jurisdiction.

## DISCUSSION

**A.   The State Was Required to Inform the Grand Jury that Trinh Submitted a Letter Presenting His Evidence.**

**¶12**         We review the superior court's decision to deny a motion to remand an indictment for an abuse of discretion. *Black v. Coker*, 226 Ariz. 335, 340, ¶ 16 (App. 2011). When the superior court commits an error of law in making a discretionary conclusion, it has abused its discretion. *Francis v. Sanders*, 222 Ariz. 423, 426, ¶ 10 (App. 2009).

**¶13**         This case requires us to clarify the State's duties under due process and A.R.S. § 21-412 when a defendant submits a letter putting forward his defense but does not ask to testify before the grand jury. Trinh argues that because the choice of whether to receive a defendant's evidence lies with the grand jury, the State violated the statute by not informing the

grand jury that he had provided a letter containing exculpatory information. In response, the State argues that when a defendant submits a letter that only offers evidence, its obligations are different than when the defendant requests to testify. The State maintains that although it must make a fair and impartial presentation to the grand jury, it need not necessarily inform the grand jury that a defendant has provided evidence. The State further argues it provided the grand jury with enough evidence from Trinh's letter to satisfy the fair and impartial standard, even though it did not inform the grand jury of the letter.

¶14 Due process requires the State to inform the grand jury of the existence of clearly exculpatory evidence. *See Trebus v. Davis*, 189 Ariz. 621, 625 (1997); *Bashir v. Pineda*, 226 Ariz. 351, 355, ¶¶ 12–13 (App. 2011). Due process also requires the State to inform the grand jury that a defendant has asked to appear or has submitted exculpatory evidence for it to consider. *Trebus*, 189 Ariz. at 623, 625 (citing *Crimmins v. Superior Court*, 137 Ariz. 39, 43–44 (1983) (Feldman, J., specially concurring)). Although the State may not be obligated to present a defendant's evidence to the grand jury, it "must inform [the] grand jury of its existence and give [the] grand jury opportunity to order its production." *Id.* at 623 (citing 38A C.J.S. *Grand Juries* §§ 168–69 (1996)).

¶15 Under A.R.S. § 21-412, a person under investigation may request to present evidence to the grand jury. *Trebus*, 189 Ariz. at 623 ("A defendant's right to request the grand jury to consider his evidence is implicit in [A.R.S. § 21-412]."). In that event, the statute provides:

> The grand jurors are under no duty to hear evidence at the request of the person under investigation, but may do so. . . . The grand jurors shall weigh all the evidence received by them and when they have reasonable ground to believe that other evidence, which is available, will explain away the contemplated charge, they may require the evidence to be produced.

A.R.S. § 21-412. Under the statute, "the grand jury is to decide if it wishes to hear a defendant or his evidence." *Trebus*, 189 Ariz. at 626.

¶16 The grand jury, however, can make an informed decision about whether to accept or reject a defendant's request to testify or provide evidence "only if on the one hand, the defendant's request provides information with some degree of detail, at least as to the subject and outline of the proposed evidence, and, on the other hand, if the prosecutor conveys

that information to the grand jury." *Trebus*, 189 Ariz. at 626; *see also Herrell v. Sargeant*, 189 Ariz. 627, 629 (1997) ("[O]n proper request, the prosecutor is obligated to inform the grand jury of any exculpatory matters, thus enabling the jury to make an informed decision under A.R.S. § 21-412."). "The grand jury is, of course, free to either grant or deny the defendant's request, but this choice is for the grand jury and not for the [State]." *Trebus*, 189 Ariz. at 625 (citing *State v. Just*, 138 Ariz. 534, 540 (App. 1983)). When a defendant requests to present evidence, there are only two options:

> The grand jury may either grant or deny the request. The statute does not authorize the [State] to present a third option of summarizing the defense evidence from [its] point of view.

*Just*, 138 Ariz. at 540.

¶17 The State argues that when a defendant does not ask to testify, but only offers exculpatory evidence, it need not inform the grand jury of the defendant's request. *Trebus* addressed the State's obligation when a defendant submits a letter requesting to present evidence to the grand jury. 189 Ariz. at 622. In discussing the State's responsibility, *Trebus* referenced both a grand jury's right to consider a defendant's exculpatory evidence *and* its right to listen to his testimony: "[W]e hold the [State] must inform the grand jury that the defendant has requested to appear *or* has submitted exculpatory evidence." *Id.* at 625 (emphasis added). The *Trebus* court's holding was intentionally disjunctive, imposing an obligation on the State to inform the grand jury when a defendant has asked to testify *or* has submitted potentially exculpatory evidence.

¶18 In *Trebus*, the defendant's letter made two requests. The first was a request to present exculpatory evidence to the grand jury, and the second was a request for notice of the grand jury proceedings so the defendant could choose to exercise his rights under A.R.S. § 21-412. *Trebus*, 189 Ariz. at 622. The request to submit evidence did not trigger the State's duty to inform the grand jury because it was vague and did not refer to any specific evidence. *See id.* at 625–26. Also, the defendant did not expressly request to testify, as his letter was non-committal about testifying. *Id.*

¶19 Here, although Trinh did not request to testify, he nevertheless asked the State to present evidence to the grand jury. Trinh's letter and request to give evidence were anything but vague. The letter outlined his defense and referred to specific evidence that he claimed was exculpatory. Like the request in *Trebus*, Trinh asked the State to give his evidence to the grand jury. But unlike in *Trebus*, Trinh's letter contained the

required specificity and clarity to trigger the State's duty under A.R.S. § 21-412. Even though Trinh did not choose to testify, his offer of specific evidence required the State to inform the grand jury of his letter. *See Bashir*, 226 Ariz. at 354, ¶ 10 ("[I]f a defendant has provided some degree of detail, at least as to the subject and outline of the proposed evidence, the prosecutor has a duty to convey[] that information to the grand jury.") (alteration in original) (quotations and citation omitted).

¶20 The State cites this court's decision in *Black v. Coker* to argue that it has different obligations depending on whether a defendant requests to testify or merely present exculpatory evidence. In *Black,* we acknowledged that an "unequivocal offer by a defendant to appear before the grand jury is distinct from any other proposed evidence." 226 Ariz. at 340, ¶ 13. However, the reasoning behind that proposition ultimately undermines the State's argument. An offer to testify is unique because it allows the defendant to either "'explain away the contemplated charge' or irrevocably incriminate himself." *Id.* (quoting A.R.S. § 21-412). Although distinct from an offer to testify, an offer to submit evidence similarly seeks to "explain away" the State's evidence. It allows the grand jury to consider the defense's perspective if it wishes to do so. *See Herrell*, 189 Ariz. at 630 (reasoning a grand jury should be informed of a defendant's version of the relevant facts and possible legal defenses to have a fair and impartial presentation).

¶21 *Black* rejected the argument that the State must disclose a defendant's request to testify only if the defendant's letter also details his anticipated testimony. 226 Ariz. at 337, 339, ¶¶ 6, 11. In coming to that conclusion, we specifically emphasized two independent triggers of the State's duties under *Trebus. Id.* at 339, ¶ 11 ("We do not read [*Trebus*] as making the prosecutor's duty dependent on both an unequivocal offer and details of exculpatory testimony. The duty to inform the grand jury is triggered if either 'the defendant has requested to appear *or* has submitted exculpatory evidence.'") (quoting *Trebus*, 189 Ariz. at 625).

¶22 In *Bashir,* this court considered the State's obligations under *Herrell/Trebus* regarding all exculpatory evidence.

> The prosecutor also has the duty, "on proper request, . . . to inform the grand jury of any exculpatory matters." Because of the request, the prosecutor must view the evidence with a wider view and consider whether a fair and impartial presentation requires informing the grand jury of the

> defendant's version of the facts as well as legal instructions
> concerning possible justification and affirmative defenses.

*Bashir*, 226 Ariz. at 355, ¶ 13 (citation omitted) (quoting *Herrell*, 189 Ariz. at 629). In the present case, the superior court reasoned that a "proper request" could mean "the grand jury's request pursuant to A.R.S. § 21-412," "a court order remanding the case to the grand jurors," or "when the defense asks the prosecutor to present unique facts such as . . . in *Herrell* and *Crimmins*." We disagree with the superior court's interpretation and conclude that a defendant does not need to offer "unique" facts to trigger the State's obligation to inform the grand jury of his request.

¶23 In *Bashir*, we stated, "[a]lthough *Herrell* involved 'unique facts' concerning a justification defense, we read it as recognizing that a grand jury's decision will often depend on being adequately informed of the circumstances surrounding an incident, including the defendant's version of events." 226 Ariz. at 354, ¶ 11. This broader principle is not constrained to the "unique facts" discussed in *Herrell*. The grand jury's decision to consider evidence submitted by a defendant always depends on being adequately informed of the defendant's request.

¶24 The State argues that it "effectively presented the content of Trinh's requested evidence through its witness, only omitting some detail, without presenting the grand jurors the opportunity to refuse it." However, *Just* expressly prohibits the State from merely summarizing evidence offered by a defendant who has identified specific evidence for the grand jury to consider. 138 Ariz. at 540. Allowing the State to summarize defense evidence hinders the grand jury's independence and ability to make an uninfluenced decision about the defendant's request. *Id.* at 539–40. Indeed, the purpose of allowing a defendant to request to testify or present evidence is to enable the *defendant* to explain away the contemplated charges. By comparison, while the State could convey the general facts that a defendant wishes to submit, an adverse party's summary lacks the perspective, context, or tenor of a defendant's words, diminishing the evidence's value.

¶25 Our review of persuasive authority from other jurisdictions reinforces our understanding of *Trebus*. The *Trebus* court relied on the California case *Johnson v. Superior Court*, which dealt with a similar statute and recognized a "defendant's right to bring exculpatory evidence to the attention of the grand jury by letter," even absent a request to testify. *Trebus*, 189 Ariz. at 624 (quoting *Johnson v. Superior Court*, 539 P.2d 792, 796 (Cal. 1975)). California courts recognize a defendant's right to submit exculpatory evidence to the grand jury as distinct from the right to testify.

8

*See McGill v. Superior Court*, 128 Cal. Rptr. 3d 120, 161 (App. 2011). On the other hand, federal courts do not require a prosecutor to disclose a defendant's exculpatory evidence to the grand jury. *United States v. Williams*, 504 U.S. 36, 52 (1992); *United States v. Navarro*, 608 F.3d 529, 537 (9th Cir. 2010). However, we have not found a federal equivalent to A.R.S. § 21-412. Thus, federal cases do not lead us to depart from the principles expressed in *Trebus*.

¶26        Contrary to the State's suggestion, the obligation to inform the grand jury of a defense letter does not convert the State into a mouthpiece for the defense. The State retains the power to refuse to present evidence a defendant profers that has no bearing on the question of the defendant's guilt or innocence, concerns matters of "witness credibility and factual inconsistencies," or is subject to a constitutional, statutory, or common-law privilege. *Bashir*, 226 Ariz. at 355, ¶ 13 (non-exculpatory evidence and evidence relating to witness credibility and factual inconsistencies); *Trebus*, 189 Ariz. at 625 (same); *Franzi v. Superior Court*, 139 Ariz. 556, 559 (1984) ("[T]he grand jury has the right to every person's evidence, absent a constitutional, common law, or statutory privilege."). For example, the State would be well within its discretion to refuse a defendant's request to present evidence of a victim's alleged promiscuity in a sexual-assault case, as such evidence is not exculpatory and barred by Arizona statutory law. *See* A.R.S. § 13-1421(A) ("Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for any offense in this chapter.").

¶27        Accordingly, we conclude the State was required to inform the grand jury that Trinh submitted a letter that described potentially exculpatory evidence and outlined his defense. The grand jury was not required to review Trinh's letter, but it was entitled to hear it existed. The State's refusal to inform the grand jury of Trinh's letter deprived the grand jury of its independence under A.R.S. § 21-412. Because the State was required to notify the grand jury of Trinh's letter, the superior court erred when it found no error in the grand jury proceeding.

## B.    The Error Was Harmless.

¶28        The presentation of evidence to a grand jury is subject to harmless-error review. *Bashir*, 226 Ariz. at 355–56, ¶ 18 (citing *Maretick*, 204 Ariz. at 198, ¶ 15). To find an error harmless, we must be confident beyond a reasonable doubt that the error did not influence the jury's judgment. *Id.* at 356, ¶ 20. ("In this case, the error was not that the grand jury chose not to

hear from Bashir, but that it was not fully informed of her offer to appear and testify."); *Maretick*, 204 Ariz. at 198, ¶ 15.

¶29 At the outset, we reject Trinh's assertion that the State's failure to present his letter to the grand jury caused harm requiring remand *per se*. As described above, "[t]he purpose of [A.R.S. § 21-412] is obviously to give the grand jury the opportunity to hear the evidence it deems necessary to make its probable cause determination." *Just*, 138 Ariz. at 540. *Trebus*, *Herrell*, and their progeny stand for the proposition that, to effectuate that purpose, the State must inform the grand jury of the existence and content of a defendant's request to present exculpatory evidence. *See, e.g.*, *Trebus*, 189 Ariz. at 625; *Herrell*, 189 Ariz. at 631; *Bashir*, 226 Ariz. at 355, ¶¶ 15–16. At its core, imposing this duty ensures the defendant's due-process right to a fair and impartial grand-jury presentation.

¶30 But the State's failure to inform the grand jury of the defendant's request does not automatically result in a deprivation of due process requiring a remand. *See Black*, 226 Ariz. at 340, ¶¶ 16–18. Before this court, Trinh suggests the State's failure to identify him as the source of the evidence deprived him of the benefit he might gain of having the grand jury aware that he had supplied the exculpatory evidence. But that cannot be because the fact that *the defendant* provided exculpatory evidence has no bearing on the grand jury's inquiry. *Cf.* A.R.S. § 21-413 ("The grand jury shall return an indictment . . . if, from *all the evidence taken together*, it is convinced that there is probable cause to believe the person under investigation is guilty of such public offense.") (emphasis added); *Maretick*, 204 Ariz. at 198 (finding denial of fair presentation to a grand jury, in part, because the State "failed to instruct the grand jury that . . . [the defendant] had no obligation to present evidence, and that the jurors could draw no negative inference from his failure to do so").

¶31 This is not to say the State has a blank check to ignore A.R.S. § 21-412. The State can expect exacting scrutiny from the court when a defendant moves to remand, raising a colorable claim that the State failed to comply with the statute. *See Trebus*, 189 Ariz. at 626; *Black*, 226 Ariz. at 340, ¶ 18 ("If the failure to inform the grand jury [of a letter from counsel] was strategic or intentional, we might conclude otherwise."). As in *Trebus*, we simply acknowledge that for any alleged violation of A.R.S. § 12-412, the central question remains whether a fair presentation to the grand jury occurred, and what constitutes a fair presentation will "vary from case to case." 189 Ariz. at 626 (quotation omitted).

¶32        In this case, we are confident beyond a reasonable doubt that the letter would not have changed the outcome. The State provided enough evidence to obtain an indictment, regardless of the evidence presented in Trinh's letter. Trinh's letter failed to address some of the State's most incriminating evidence. For example, Trinh's letter did not dispel the evidence that he performed motor threshold determinations on patients without the presence of Dr. Kawamoto. Nor did the letter address the evidence that Trinh adjusted a patient's TMS treatment without informing Dr. Kawamoto, causing intense pain and making the patient fall to the floor.

¶33        Moreover, Trinh's letter did not challenge the State's evidence that he routinely misrepresented himself in promotional materials with the "M.D." designation.[1] Likewise, the letter addressed none of the many patients who believed he was a licensed doctor. It also failed to address the loan application materials that also contained the "M.D." identifier. Thus, Trinh's letter did not "explain away" the State's most concerning allegations. *See Black*, 226 Ariz. at 340, ¶ 17 (finding an error harmless partially because the testimony was unlikely to explain away the State's charges).

¶34        Trinh's letter also challenged a witness's credibility and motivation for speaking out against him. However, we reiterate that "issues such as witness credibility and factual inconsistencies are ordinarily for trial." *Trebus*, 189 Ariz. at 625.

¶35        The State disclosed most of Trinh's evidence to the grand jury, even though it did not provide the context or narrative that Trinh wanted it to offer. Trinh's letter strongly emphasized that Dr. Kawamoto always approved medical decisions and was listed on consent forms, medical charts, prescriptions, and explanations of benefits as the prescribing physician. The State's presentation informed the grand jury of this arrangement. However, its theory was that Dr. Kawamoto was not regularly in the office but went in only to bulk-sign weekly paperwork. Similarly, while the State may not have conveyed Trinh's background to the grand jury with the detail or nuance Trinh wanted, the State made clear

---

[1]        Although Trinh requested the jury be informed of A.R.S. § 32-1455(B)(1) and why he could not be charged with misusing the title "M.D.," we note that Trinh was not indicted under that statute. Furthermore, any distinction between the unlawful use of "M.D." and the unauthorized practice of medicine is of little significance considering the unaddressed evidence that he treated patients without supervision.

Trinh was a trained and fully certified TMS operator. The State's presentation of this evidence may not have been particularly favorable to Trinh, but it was not misleading.

**¶36** The grand jury's role is not to decide a defendant's guilt—it is to make a probable cause determination. *Trebus*, 189 Ariz. at 625. Given the uncontroverted allegations in the State's grand jury presentation and the disclosure of most of Trinh's evidence, we conclude the State's error was harmless in this case.

## CONCLUSION

**¶37** We grant special action jurisdiction but deny relief.

